Argued July 8, affirmed December 19, 1974, petition for
rehearing denied February 11, 1975

JOHNSON, *Appellant, v.* STAR MACHINERY
COMPANY, *Respondent.*

530 P2d 53

*Donald A. Bick,* Eugene, argued the cause for appellant. On the briefs were Charles M. Gudger, III, and Bick, Monte & Joseph, Eugene.

*Paul D. Clayton,* Eugene, argued the cause for respondent. With him on the brief were Luvaas, Cobb, Richards & Fraser, Eugene.

HOLMAN, J.

This is an appeal from a judgment for defendant in a wrongful death action brought in products liability and negligence by plaintiff as the representative of decedent's estate. A demurrer to

both counts was sustained upon the ground that the action had not been commenced within the time permitted by ORS 12.115 (1).

Plaintiff's decedent was killed in the course of his employment. A plywood sander manufactured by defendant ejected a piece of plywood which hit decedent. The sander had been purchased from defendant by decedent's employer in 1959. The fatal accident occurred on February 19, 1970. This action was commenced within three years thereafter on February 16, 1973.

ORS 12.115 (1) provides as follows:

> "In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

The question in this case is whether this statute is applicable to the present situation. If it is, the trial court was correct in sustaining the demurrer because the "act or omission complained of" was either the negligent manufacture of the article in the one count or the sale of the defective article by defendant to the employer of plaintiff's decedent in the other, and both occurred more than 10 years prior to the commencement of plaintiff's action. Plaintiff's position is that the statute applies to neither count.

Plaintiff contends that ORS 12.115 (1) has no application to his negligence count because the statute providing for an action for wrongful death, ORS 30.-020,[1] permits such an action only had decedent been

---

[1] ORS 30.020. "(1) When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving

able to assert a claim for his injuries had he lived; had decedent lived, the applicable period of limitation, ORS 12.110 (1),[2] would not have commenced to run until the cause of action accrued as provided by ORS 12.010;[3] plaintiff's decedent's cause of action would not have accrued until he received his injuries and, therefore, plaintiff had three years from the date the decedent was injured to bring his action as provided by ORS 30.020.

In the case of *Josephs v. Burns & Bear*, 260 Or 493, 491 P2d 203 (1971), we held that ORS 12.115 (1) was applicable to an action against architects and engineers for negligent supervision and construction of a building, the roof of which collapsed some 17 years later causing the damage complained of. We there held that the statute was intended by the legislature to be one of ultimate repose which could abolish a cause of action before it accrued. We determined

---

spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent, may maintain an action against the wrongdoer, if the decedent might have maintained an action, had he lived, against the wrongdoer for an injury done by the same act or omission. The action shall be commenced within three years after the occurrence of the injury causing the death of the decedent.

"* * * * * *"

[2] ORS 12.110 (1). "An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years * * *.

"* * * * * *"

[3] ORS 12.010. "Actions at law shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute * * *."

from the legislative history of the statute that ORS 12.115 (1) was enacted in response to the opinion of this court in *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966). In *Berry,* a medical malpractice case involving a foreign object left in the body cavity of a surgery patient, we held that the cause of action did not "accrue" and, therefore, the statute of limitations did not begin to run until such time as the object was discovered, or, in the exercise of reasonable care, should have been discovered by the patient. This was a reversal of previous case law which held that in such situations the cause of action accrued and the statute commenced to run at the time of the negligent act or omission. The legislative response to *Berry* was the enactment of ORS 12.110 (4), which limited the bringing of a malpractice action to a period of two years from the time the injury was discovered or should have been discovered, and, in any event, to within a seven-year period[4] from the time of the treatment, omission, or operation upon which the action was based.

At the same time, the legislature recognized that the rationale of *Berry* might be applicable to other situations in which negligence went understandably undetected until after the pertinent statute of limitations expired. As a result, as part of the same legislative act, it enacted ORS 12.115 (1), which established a 10-year statute of ultimate repose for such cases. We said in *Josephs v. Burns & Bear, supra* at 498-99:

> "In *Berry,* we held that the cause of action did not 'accrue' until the patient knew or, in the exercise of reasonable care, should have known of the injury inflicted upon her. It is clear that the legis-

---

[4] Subsequently modified to five years.

lative committees which were dealing with the problem of long delayed tort litigation brought about by lack of discovery considered the possibility of defining the time when a cause of action 'accrued' as a response to the *Berry* decision. It is our belief that the legislature chose as preferable to the amendment the enactment in one bill of ORS 12.110 (4) relating specifically to medical malpractice claims and of ORS 12.115 (1) relating generally to other tort claims. ORS 12.115 (1) left the discovery rationale of *Berry* intact, should this court subsequently chose [sic] to apply the *Berry* rationale to torts other than medical malpractice, but prescribed an ultimate cut-off date in any event for the commencement of tort claims litigation."

■ Plaintiff attempts to distinguish *Josephs* from the present situation by claiming that in *Josephs* a cause of action accrued at the time the building was defectively built, despite the fact that the damage claimed was caused by the collapse of the roof 17 years later, whereas, in the present case, no cause of action accrued until decedent was fatally injured, which occurrence was less than three years prior to the commencement of this action. In other words, plaintiff is contending that in *Josephs,* as in *Berry,* pre-existing but undetected damage existed from the time of defendant's negligence and a cause of action accrued from that time, while in the present case all damage occurred at the time plaintiff's decedent was fatally injured, and thus no cause of action accrued until then. Whether such a distinction is a relevant one depends on the rationale behind the enactment of a statute of ultimate repose. In general, there are usually two reasons which are advanced as justification for the imposition of such statutes. The first concerns the lack of reliability and availability of evidence after a lapse of long periods of time. This rationale primarily

protects defendants who, without prior notice of pending claims, would necessarily find it extremely difficult, if not impossible, to mount a defense because of the nonpreservation of evidence and the disappearance or death of witnesses after a long lapse of time. However, the reliability of plaintiff's evidence relating to long-past occurrences, transactions or conditions is also a relevant feature.

The second rationale concerns the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability; *e.g. Pearson v. Northeast Airlines, Inc.,* 309 F2d 553, 559 (2d Cir 1962) (*dictum*), *cert. denied* 372 US 912, 83 S Ct 726, 9 L Ed 2d 720 (1963).

These rationales are obviously applicable without regard to whether or not undetected damage had occurred at the time of the original negligence. The existence of such damage at the time of the original negligence is irrelevant to the application of the statute and its underlying policies, and we so held in *Josephs.* Contrary to plaintiff's analysis of when the damage first occurred in *Josephs,* the plaintiff there made the argument which the plaintiff makes here, *i.e.,* that the damage did not occur until the subsequent accident, and, therefore, the cause of action did not accrue and the statute did not commence to run until that time. We stated in *Josephs:*

> "Plaintiff points out that ORS 12.010 specifies that the limitation statutes in chapter 12 shall only commence to run from the time the cause of action accrues and that the present cause of action could not come into existence before the damage was inflicted. We can answer this argument only

by saying that in our opinion ORS 12.115 (1) was intended to apply as a ten-year limitation from the date of the act or omission regardless of when the damage resulted or when the act or omission was discovered." *Josephs v. Burns & Bear, supra* at 500.

Plaintiff also contends that such a result is in violation of the following language of the Oregon Constitution, Art I, § 10:

"* * * [E]very man shall have remedy by due course of law for injury done him in his person, property or reputation."

A cause of action may be constitutionally abolished or limited so long as it is not done arbitrarily and there is a legitimate, countervailing public interest or policy which arguably is served by such action. There are legitimate public policies which are served by the enactment of a statute of ultimate repose, which policies have heretofore been identified.

Plaintiff next contends that ORS 12.115 (1) has no application to his products liability count because the statute by its literal terms is applicable only to "negligent injury" and negligence is foreign and unnecessary to strict liability, which is the basis of a products liability case. In *Josephs* we used the term "tort claims" rather than "actions for negligent injury," which were the words of the statute. The broader language was unnecessary to the disposition of that case as negligence was all that was involved. We now have a situation where it is necessary to determine whether it was the intention of the legislature to limit the scope of ORS 12.115 (1) to its literal terms.

We find no evidence in the legislative history which indicates the legislature specifically considered

the products liability concept when it enacted the statute. It would have been difficult for the legislature to anticipate the subsequent state of products liability law since this court first fully embraced Restatement (Second) of Torts § 402A six months after the effective date of ORS 12.115 (1), when we decided the case of *Heaton v. Ford Motor Co.*, 248 Or 467, 435 P2d 806 (December 29, 1967). Statutory construction difficulties usually arise from situations in which the legislature did not anticipate the problem. This situation is no exception. Had the problem been anticipated, would the legislature have included products liability cases within the purview of ORS 12.115 (1) or would it have excluded them so that liability from undiscovered injury or defect would go on forever from the time of the act or omission complained of?

■ Plaintiff's principal argument is based upon the well-known proposition that this court cannot ignore the plain meaning of unambiguous words in a statute. The rule is thus stated in *Lane County v. Heintz Const. Co. et al*, 228 Or 152, 157, 364 P2d 627 (1961):

"* * * [W]e first take note that the court is not authorized to rewrite a statute or to ignore the plain meaning of unambiguous words to correct the action of the legislature, or, in this instance, the action of the Board of County Commissioners of Lane county.

" '* * * The court's province, after all, is to ascertain what the legislature intended from *the language used,* with such aid as may be found in the rules of interpretation and legitimate extrinsic sources; to construe statutes, not to enact them; to declare what the legislature has done, not what it should have done. * * *' *Fullerton v. Lamm,* 177 Or 655, 670, 163 P2d 941, 165 P2d 63. (Emphasis supplied.)"

However, the rule requiring the court to follow the

plain meaning of seemingly unambiguous language is not inflexible and not without exceptions. Hence, if the literal import of the words is so at variance with the apparent policy of the legislation as a whole as to bring about an unreasonable result, the literal interpretation must give way and the court must look beyond the words of the act. In *U. S. v. Amer. Trucking Ass'ns.*, 310 US 534, 542-44, 60 S Ct 1059, 84 L Ed 1345 (1940), the United States Supreme Court said:

"In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention * * *.

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination' * * *." (Footnotes omitted.)

This rule is firmly established in Oregon. In *Fox v. Galloway,* 174 Or 339, 346-47, 148 P2d 922 (1944), this court stated that:

"* * * The cardinal rule of statutory con-

struction is to ascertain the meaning of the legislature and give it effect, if such meaning is constitutional. In determining the intent many things are taken into consideration: the language used, the object to be accomplished, whether a literal interpretation of the language will lead to an impossibility or an absurdity, the history behind the act, and numerous other matters, no one of which is absolutely controlling as to the legislative intent. It is from a combination of all these that the intent is deduced: *Union Fishermen's Co. v. Shoemaker,* 98 Or. 659, 193 P. 476, 194 P. 854; *State v. Gates,* 104 Or. 112, 206 P. 863; *Calder v. Orr,* 105 Or. 223, 209 P. 479; *State ex rel. Hood River Hospital v. Employees' Hospital Association,* 157 Or. 618, 73 P. (2d) 693.

"If the language is plain and unambiguous, if it can be given but one meaning, and that meaning does not lead to an impossibility or an absurdity such as the legislature could not be supposed to have intended, the court must give effect to that meaning if constitutional, even though the result may be, in the court's opinion, harsh, unjust or mistaken in policy: *Public Service Commission v. Pacific Stages, Inc.,* 130 Or. 572, 281 P. 125; *State v. Tollefson,* 142 Or. 192, 16 P. (2d) 625; *Anderson v. Thomas,* 144 Or. 572, 26 P. (2d) 60.

"*When, however, a literal application of the language produces an absurd or unreasonable result, it is the duty of the court to construe the act, if possible, so that it is a reasonable and workable law and not inconsistent with the general policy of the legislature: Othus v. Kozer,* 119 Or. 101, 248 P. 146; *State v. Hay,* 132 Or. 223, 283 P. 753; *Portland Van & Storage Co. v. Hoss,* 139 Or. 434, 9 P. (2d) 122, 81 A. L. R. 1136 * * *." (Emphasis supplied.)

*Fox* has been subsequently cited with approval, *e.g., Peters et al v. McKay et al,* 195 Or 412, 439, 238 P2d

225, 246 P2d 585 (1952), and most recently in *State v. Irving*, 268 Or 204, 206, 520 P2d 354 (1974).

■ In this context it would not be an unreasonable extension of the often quoted statement "* * * a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers * * *," *Holy Trinity Church v. United States*, 143 US 457, 459, 12 S Ct 511, 36 L Ed 226 (1892), to state its corollary which would be that a thing may not be within the letter of the statute and yet be within the intention of its makers. As stated earlier, it is the legislative intent which controls. When such intent is manifest the courts must give it effect, even though to do so does violation to the literal meaning of its words. *Allen v. Multnomah County*, 179 Or 548, 554, 173 P2d 475 (1946); *Fish v. Bishop*, 176 Or 210, 212-13, 156 P2d 204 (1945).

This approach is generally referred to as the rule of the equity of the statute. 2A Sands, Sutherland Statutory Construction 351-77, ch 54 (4th ed 1973). The rule is premised on the fact that people often resort to particularities in their communications when in fact they are only attempting to communicate a general principle. In such cases, it would be wholly unreasonable not to apply the unstated principle to a thing which comes within the principle but which does not come within the narrow confines of the illustrative particularity. *Willamette Univ. v. Tax Com.*, 245 Or 342, 344, 422 P2d 260 (1966); *Corbett Inves't Co. v. State Tax Com.*, 181 Or 244, 250, 181 P2d 130 (1947).

■ In determining whether the exclusion of products liability cases from the purview of the statute in question would bring about an unreasonable re-

sult, it is necessary to determine whether the reasons behind the application of the statute to negligence cases are equally applicable to products liability cases. If the policies behind the statute are equally applicable to both, and there are no relevant distinguishing features of consequence, it would be unreasonable to apply the statute to negligence cases but not to products liability cases.

The rationales behind the enactment of statutes of repose have already been identified. Clearly, the rationale concerning the prevention of the burden of protracted and unknown potential liability is applicable to both theories of recovery alike, and assertion of this rationale is indicative of the application of the statutes of ultimate repose in either case.

The application of the rationale concerning the reliability and availability of evidence to products liability cases is more difficult to determine. In the trial of a products liability case the plaintiff must show a defect in the product which caused injury to his person or property. In this part of his case he does not have to go back in time farther than that of the injury, which must be within two years in the usual case, or, if the injury causes death, three years.

However, in addition he must also prove the defect was in existence at the time the product was sold. This is the part of a products case which usually generates the greatest dispute, and this would be so to a progressively greater extent as the time the product was put into the stream of commerce became more remote. The usual method of proof involves a showing by plaintiff that no change relevant to the condition which caused the injury has taken place during the life of the article. This is ordinarily shown by

proof that no intentional change was made by the purchaser and that the product has not been subject to a degree of misuse during its life which would have brought about an inadvertent change. The usefulness of this kind of evidence becomes more precarious as the life of the article prior to the infliction of the injury increases.

The defense against the claim usually involves an attempt to disprove plaintiff's allegations that the article was defective at the time it was put into the stream of commerce. This requires the testimony of people who were familiar with the condition of the article at the time it was sold. As in the present case of a plywood sander, the product is often installed in the purchaser's plant by the manufacturer and, if so, the testimony of the workman who installed it would be pertinent. Also, in an effort to show that the likelihood of such a defect occurring prior to sale was minimal, the seller usually calls the manufacturer's supervisory employees who, at the time of the manufacture of the article, were intimately concerned and therefore familiar with production methods and quality controls. A defense also involves an attempt by the defendant to determine the kind of use and treatment the article has received since it was put into the stream of commerce. Insofar as a dispute revolves around the condition of the article at the time it was put into the stream of commerce, the reliability and availability of the evidence is as much a problem as if the case were one based upon negligence in manufacture or sale.

In fact, there is seldom much difference between the way negligence cases and products liability cases are tried. Plaintiff usually pleads one

count in negligence and one count in products liability, as was done here. As has been demonstrated, the difference in the two cases is that in a negligence case the reasonableness of the defendant's actions is in question while in a products liability case it is the condition of the article at the time of the sale which is in question. *Phillips v. Kimwood Machine Co.,* 269 Or 485, 525 P2d 1033 (1974); *Roach v. Kononen/Ford Motor Co.,* 269 Or 457, 525 P2d 125 (1974). Evidence which is relevant to one usually is relevant to the other. *Roach, supra* at 466. The two issues are both related to approximately the same period of time—that is, the time of manufacture and sale. It is our conclusion that there is no substantial difference between the evidence that is used to prove the two types of cases insofar as the applicability of a statute relating to the reliability and availability of evidence is concerned.

There being no difference of substantial consequence in the application to each kind of case of the rationales behind the enactment of a statute of ultimate repose, such as ORS 12.115 (1), the exclusion from the purview of the statute of products liability cases would be at variance with the policy of the legislation and, therefore, would bring about an unreasonable result. In such an instance, the literal interpretation of the statute gives way and the court must look beyond the words of the act and construe the statute in accordance with the policy prompting the legislation. It is our conclusion that the statute covers products liability cases as well as those of negligence.

The dissent does not attack the premise that in nearly all instances the evidence (as distinguished from the issue to be proved) is the same in products liability cases as it is in negligence cases. Any statute

limiting the time within which an action can be brought is primarily concerned with the availability and reliability of evidence after the lapse of time. Thus, the dissent would put this court in the position of saying the legislature intended different statutes to apply in situations where the problems of availability and reliability of the evidence are the same. It would also place this court in the position of holding that if a person negligently sells a defective article he has the benefit of a ten-year statute of ultimate repose, but if liability is attached without fault for the sale of a defective article, liability can conceivably go on forever. Negligent sellers are eventually relieved of liability while faultless sellers are not given such consideration.

The dissent places the court in this position by demonstrating that at the time of the passage of the statute in question, the legislature necessarily was aware of other forms of strict liability, such as the concept of ultrahazardousness as well as conditions constituting nuisances, such as "fume" and "chemical spray" situations. It infers therefrom that, having had knowledge of such concepts, the legislature would have specifically included strict liability causes of action within the purview of ORS 12.115 (1), had this been its intention.

The fallacy of this reasoning is in assuming that problems concerning the availability and credibility of evidence are the same in all types of strict liability. The dissent's assumption is valid only if such problems in ultrahazardousness cases are the same as they are in products liability cases. One can draw all the similarities or dissimilarities one desires from the various theories of recovery, but the thing of im-

portance is the similarity or dissimilarity of the evidence it takes to prove the respective theories. The fact remains that the evidence in products liability cases and negligence cases is identical, so the problems of the availability and credibility of evidence have to be the same. The contrary is true in the average ultrahazardousness case. Proof of the issues in such a case is not so likely to be obscured by the passage of time. The principal issues are the extent of the damage, which necessarily is of recent vintage, and whether the activity which caused the damage is of the kind that is abnormally dangerous. The inherently dangerous propensities of liquid natural gas, dynamite, aluminum fumes, or of other substances and activities are matters that usually are readily capable of proof without regard to the passage of time. As an example, see *McLane v. Northwest Natural Gas,* 255 Or 324, 467 P2d 635 (1970). In many fumes cases the passage of time makes proof more readily available instead of to the contrary.

The above illustrates that the fact that the doctrine of ultrahazardousness was known to the legislature when it enacted ORS 12.115 (1) and the fact that both ultrahazardousness and products liability are forms of strict liability are both irrelevant to whether the legislature would have intended products liability cases to come within the purview of the statute had such form of liability been in existence at that time.

The dissent further argues that the legislature could foretell the coming of the products liability concept subsequently arrived at in *Heaton v. Ford Motor Company, supra,* by statements in *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965), as well as by authority in other states and Section 402A of Re-

statement (Second) of Torts. If someone had made a complete analysis of that particular part of tort law for the legislature, by hindsight we might say he could have made an educated guess; but we do not find the slightest indication in the legislative history that such was the fact or that the concept of products liability was discussed.

The dissent also contends that the complaint states a cause of action for ultrahazardousness and, therefore, the statute of ultimate repose does not apply even if it is applicable to products liability cases. This will come as a great surprise to both litigants. Plaintiff asserts an action under the rule of Section 402A of the Restatement (Second) of Torts. "Ultrahazardousness" as a theory of recovery is never mentioned by anyone. We do not assume to construe plaintiff's complaint in a manner which he did not intend and for which he makes no contention.

The judgment of the trial court is affirmed.

TONGUE, J., dissenting.

In 1967 the Oregon legislature enacted a statute which, among other things, provided that "In no event shall *any action for negligent injury* to person or property of another be commenced more than 10 years from the date of the act or omission complained of." (Oregon Laws 1967, ch 406, now ORS 12.115 (1)).

The majority holds that a products liability case involving a product that is "dangerously defective," so as to provide a basis for strict liability under § 402A of the Restatement of Torts 2d (1965), is subject to the 10 year limitation provided by ORS 12.115 (1) as an "action for negligent injury," but that a products liability case involving a product so "dangerously defective" as to be "ultrahazardous," and thus

provide a basis for strict liability under the rule of *Wights v. Staff Jennings,* 241 Or 301, 310-311, 405 P2d 624 (1965), is not subject to that limitation.

The majority also holds that although the facts alleged by plaintiff's complaint in describing this "Timesaver Speed Sander" machine may have been sufficient to entitle him to recovery upon the ground that it was "ultrahazardous," his claim is nevertheless barred by the 10 year limitation because he contended that he was entitled to recovery under § 402A, even though that limitation would not be a bar if plaintiff had described the machine as "ultrahazardous" and contended that he was entitled to recovery under *Wights v. Staff Jennings, supra.*

The majority attempts to reconcile these incongruous results by an elaborate process of reasoning based upon assumptions which I believe to be invalid.

1. *The assumption by the majority that in enacting ORS 12.115(1) the 1967 Legislature gave no consideration to the "concept of products liability."*

The first assumption upon which the majority opinion is based is its assumption that in enacting Oregon Laws 1967, ch 406, and in its use in § 2 of that statute, the term "any negligent injury," the 1967 Legislature gave no consideration to the "products liability concept."[1]

---

[1] Thus, the majority says that:

"We find no evidence in the legislative history which indicates the legislature specifically considered the products liability concept when it enacted the statute. It would have been difficult for the legislature to anticipate the subsequent state of products liability law because this court first fully embraced Restatement (Second) of Torts § 402A six months

With all due respect, I would venture to say that such an assumption has no foundation other than speculation and would ascribe to the legislature a naivete, if not ignorance, beyond all reasonable credulity.

I submit, on the contrary, that the courts must ascribe to the legislature some understanding of fundamental rules of tort law. It is a matter of common knowledge that bills in the Oregon legislature ordinarily are prepared by or with the assistance of counsel or are examined by legislative counsel at some stage of the legislative process. Any first year law student in 1967 knew that there could be recovery for injury to persons or property on a number of theories without proof of either negligence or intentional harm. Indeed, this court has held that it must be presumed that a statute has been enacted "in the light of such existing judicial decisions as have a direct bearing upon it." *State v. Waterhouse*, 209 Or 424, 436, 307 P2d 327 (1957).

As of 1967 such recovery in Oregon could be had in tort for injury to persons or property resulting, for example, from:

(1) Ultrahazardous activities, such as blasting with dynamite. *Bedell et ux v. Goulter et al*, 199 Or 344, 349, 261 P2d 842 (1953). See also *Gronn et ux v.*

after the effective date of ORS 12.115 (1), when we decided the case of Heaton v. Ford Motor Co., 248 Or 467, 435 P2d 806 (December 29, 1967). Statutory construction difficulties usually arise from situations in which the legislature did not anticipate the problem. This situation is no exception. Had the problem been anticipated, would the legislature have included products liability cases within the purview of ORS 12.115 (1) or would it have excluded them so that liability from undiscovered injury or defect would go on forever from the time of the act or omission complained of."

*Rogers Construction, Inc.,* 221 Or 226, 231, 350 P2d 1086 (1960);

(2) Conditions or activities constituting a nuisance, such as in the so-called "fume" cases, *Martin et ux v. Reynolds Metals Co.,* 221 Or 86, 102, 342 P2d 790 (1960), or the chemical spraying cases, *Loe et ux v. Lenhard et al,* 227 Or 242, 254, 362 P2d 312 (1961);

(3) Escape of stored water. *Brown, Adm'x v. Gessler et al,* 191 Or 503, 512-513, 230 P2d 541 (1951);

(4) Keeping of animals known to be dangerous. *Jaco v. Baker,* 174 Or 191, 198-199, 148 P2d 938 (1944).

For several years, decisions by this court had referred to and discussed these theories apart from the traditional concepts of negligence and intentional harm. See *Kelley v. Park View Apartments,* 215 Or 198, 206-219, 330 P2d 1057 (1959); *Hungerford v. Portland Sanitarium,* 235 Or 412, 416, 384 P2d 1009 (1963); and *Hevel v. Stangier,* 238 Or 44, 49-50, 393 P2d 201 (1964).

At least some further development of the concept of strict liability was also not at all "difficult to anticipate" in 1967 in view of the widespread discussion of decisions by the California Supreme Court in *Greenman v. Yuba Power Products, Inc.,* 59 Cal 2d 57, 27 Cal Rptr 697, 377 P2d 897 (1963); and *Escola v. Coca Cola Bottling Co. of Fresno,* 24 Cal 2d 453, 150 P2d 436 (1944), as well as § 402A of the Restatement of Torts 2d (1965), as approved by the American Law Institute in 1964.

Of even more importance, however, is the fact that even before 1967 this court, by its decision in *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624

(1965), although not adopting § 402A discussed and cited *Greenman* and *Escola,* and held (at 310-311) that:

"* * * We believe that strict liability may be imposed upon the seller in appropriate circumstances through the application of established tort principles directly or by analogy. Thus *the seller may be strictly liable for physical harm resulting from the sale of a product which creates an ultrahazardous condition.* In such a case the basis for liability is the same as that employed in other cases imposing strict liability, as for example where the harm results from the use of high explosives, or the use of chemicals." (Emphasis added)

As pointed out by the majority, the legislature, in the enactment of ORS 12.110 (4), was aware of our decision in *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966), and the manner in which it changed the law. It is fair to assume then that the legislature, in the enactment of ORS 12.115 (1), was equally aware of our decision in *Wights* because, in my opinion, that decision was as well known by those concerned with the law of torts in Oregon, including the legislature, as our decision in *Berry.* Thus, the fact that in 1967 the legislature might not have anticipated "the *subsequent* state of products liability law" is wholly immaterial, because this court had already announced the adoption of a rule of strict liability in torts for application in many, if not all, cases involving the sale of defective products.

It is also significant that the 1973 Legislature again considered this problem and rejected Senate Bill 134, which would have repealed ORS 12.115 (1), among other statutes, and adopted for all actions for damage or injury a uniform "statute of ultimate re-

pose" of seven years from the date of the act or omission involved.

It may be, as stated in *Berry* (at 311) that "legislative inaction is a [somewhat] weak reed upon which to lean in determining legislative intent." Yet in *Berry* this court went on to say that the "legislative inaction" involved in that case "should not be ignored" in determining legislative intent.

At the least, the refusal of the legislature to enact such legislation in 1973 is a more substantial "reed" upon which to "lean" in this case in that it confirms the contention that in 1967 the legislature meant what it said in limiting ORS 12.115 (1) to actions for "negligence" than the pure speculation by the majority that in 1967 the legislature did not consider that problem at all.

The effect of what the legislature did in both 1967 and 1973 was to reject an approach to this problem as described in *Nelson v. Volkswagen of America, Inc.,* 315 F Supp 1120 (D NH 1970), although in a different context (at 1122), as follows:

"This approach, in our opinion, does not meet the realities of life in today's society where the consumer is dependent on a remote manufacturer for many of the products he uses. The 'repose' of the manufacturer must give way to the welfare of the consuming public, and if this means liability *in perpetuity,* so be it. Products containing defects when manufactured, which remain undetected, are veritable time bombs ready to explode in the face of the hapless consumer at any time. Manufacturers cannot escape their responsibility for creating such dangers by invoking statutes of limitations designed for contract cases. If it can be proven that the manufacturer was responsible for

the defect, then it ought to be held responsible for the results."

It also follows for these same reasons that it is more probable that when the 1967 Legislature enacted Oregon Laws 1967, ch 406, and used in § 2 of that bill the term "any action for negligent injury to person or property," but used in § 1 the term "any injury to the person or rights of another, not arising on contract," the legislature knew very well that there were various other grounds in addition to "negligence" for recovery for "injury to person or property," and that with such knowledge the legislature meant what it said when it provided a 10 year limitation only for "any action for negligent injury."

2. *The assumption by the majority that this court may properly, as a matter of statutory "interpretation," refuse to give the words of an unambiguous statute their plain and ordinary meaning if to do so would require a result which this court believes to be "unreasonable."*

The majority does not contend that the words "any action for negligent injury" are ambiguous. Instead, the majority states that the following is a proper rule of statutory interpretation of an unambiguous statute and the rule which should be applied in this case:

"* * * [T]he rule requiring the court to follow the plain meaning of seemingly unambiguous language is not inflexible and not without exceptions. Hence, if the literal import of the words is so at variance with the apparent policy of the legislation as a whole as to bring about an *unreasonable result,* the literal interpretation must give way and the court must look beyond the words of the act. * * *" (Emphasis added)

With all due respect to the majority, it is submitted that although much loose language has been used by the courts in stating purported "rules" of statutory construction, the proper rule for application in this case is the rule stated by this court in *Fox v. Galloway,* 174 Or 339, 347, 148 P2d 922 (1944), which the majority quotes with apparent approval, but declines to follow:

> *"If the language is plain and unambiguous,* if it can be given but one meaning, and that meaning does not lead to an *impossibility* or an *absurdity* such as the legislature *could not* be supposed to have intended, *the court must give effect to that meaning if constitutional, even though the result may be, in the court's opinion, harsh, unjust or mistaken in policy* [citing cases]." (Emphasis added)

To the same effect, see *Feero et al v. Housley et al,* 205 Or 404, 415, 288 P2d 1052 (1955); and *Roy L. Houck & Sons v. Tax Com.,* 229 Or 21, 30-31, 366 P2d 166 (1961).

Indeed, ORS 174.010 states the following requirement:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, * * *."

What the majority has done in this case is to adopt a "rule of statutory construction" under which it has refused to "declare" the plain and ordinary meaning of the words "any action for negligent injury," but has "insert(ed) what has been omitted," i.e., reference to an action for strict liability under § 402A.

The general rule of statutory construction, of course, is that the words used in a statute are to be

given their "plain" and "ordinary" meaning. 2A Sands, Sutherland Statutory Construction 24, 48, §§ 45.08, 46.01 (4th ed 1972). To the same effect, it is a well recognized rule of statutory construction, as also stated in Sands, *supra* (at 277-278), that:

> "Words and phrases having well-defined meanings in the common law are interpreted to have the same meanings when used in statutes dealing with the same or similar subject matter as that with which they were associated at common law. * * *"

See also Sands, *supra* at 49.

This court in *Silver Falls Co. v. E. & W. Lbr. Co.,* 149 Or 126, 148-149, 40 P2d 703 (1935), held, in construing a statute using the word "negligence," that:

> "* * * The act does not define negligence, and a conclusion is therefore warranted that the legislature expected the courts to apply to the term its common-law meaning. * * *"

The rule of statutory construction which should have been applied by the majority in this case is the rule stated by this court in *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 160, 364 P2d 627 (1961), as follows:

> "The insertion of words inadvertently omitted or the alteration of the language of a statute by a court is a power always cautiously exercised and never employed unless it can be *clearly* seen that to do so is *necessary* to effectuate the legislative intent. * * *" (Emphasis added)

This is consistent with the generally recognized rule that a statute of limitations should not be applied to cases not *clearly* within its provisions. *Pugnier v. Ramharter,* 275 Wis 70, 81 NW2d 38, 42 (1957); and *Mowry v. City of Virginia Beach,* 198 Va 205,

93 SE2d 323, 326 (1956). See also Note, Statutes of Limitations: Their Selection and Application in Products Liability Cases, 23 Vand L Rev 775, 776, 790 (1970). Cf. Comment, 45 Or L Rev 73, 80 (1965).

With all due respect to the majority, I do not believe that this court can say with any degree of confidence that it is "clear" that when the Oregon legislature adopted ORS 12.115 (1) in 1967 it intended that statute to be applied to products liability cases based on strict liability under § 402A, but not to injuries resulting from "ultrahazardous" products, conditions or conduct, nuisances, or to any other actions for "injury to persons or property."

3. *The assumption by the majority that it is "unreasonable" per se for two different statutes of limitations to apply in a single action for personal injuries.*

It appears to be implicit in the opinion by the majority that it is "unreasonable" *per se,* and therefore "at variance with the apparent policy of the legislature as a whole," or vice versa, for "an action for negligent injury" to be subject to a 10 year "statute of repose," but an action for the same injuries, if brought under § 402A of the Restatement of Torts 2d, not to be subject to the same limitation.

In *Redfield v. Mead, Johnson & Co.,* 266 Or 273, 512 P2d 776 (1973), an action was brought for personal injuries against the manufacturers of a contraceptive drug. The action was brought more than two years after the alleged injury, but within four years. The trial court sustained a demurrer on the ground that the action was barred by the two year tort statute of limitations, ORS 12.110. We reversed,

holding that the four year statute of limitations provided by the Uniform Commercial Code, ORS 72.7250, was applicable.

In so holding, the majority of the court (O'CONNELL, C.J., and HOLMAN, J., dissenting) expressly rejected defendant's contention to the effect that it was unreasonable to assume that the legislature could have intended two different periods of limitations to be applicable in products liability cases. In so holding we said (266 Or at 279):

> "It is argued that the legislature could not have intended plaintiffs in product liability cases to have a choice between two different limitation periods, * * *. We have not, however, found any evidence of the legislature's intention to limit plaintiffs to a single theory of recovery."

In *Redfield* this court (266 Or at 280-281) also cited other cases in which this court had also held that a plaintiff may have available to him two different periods of limitation in an action for a single wrong, depending upon which of two theories of recovery he may choose, including *Martin et al v. Reynolds Metals Co.*, 221 Or 86, 342 P2d 790 (1960), and *Wells v. Oldsmobile Co.*, 147 Or 687, 35 P2d 232 (1934).

In addition, it should be remembered that the legislature has not followed any uniform policy as to either "ordinary" statutes of limitation or what the majority refers to as "ultimate statutes of repose."

ORS 12.110 (1) provides that in an action for fraud the statute of limitations is two years but the "limitation shall be deemed to commence only from the discovery of the fraud or deceit."

ORS 12.110 (4) provides that in an action for

injuries arising from any medical treatment the statute of limitations is "two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered" but in no event later than "five years from the date of the treatment."

ORS 12.135 (1), adopted in 1971, provides that in an action against architects, engineers and contractors for damages from construction of improvements on land the statute of limitations is "two years from the date of such injury" but in no event later than "10 years from substantial completion" of the construction.

ORS 12.110 (1) provides, among other things, that actions for injury to the person or rights of another (including negligent injuries) shall be commenced within two years, but it is provided by ORS 12.115 (1) that "In no event shall an action for negligent injury" be commenced "more than 10 years from the date of the act or omission complained of."

No other "ultimate statutes of repose" are provided for any other actions.

It may be that in the interests of consistency a uniform "statute of ultimate repose" should be adopted for these and other actions. In my view, however, the decision whether to adopt such a uniform limitation is one to be made by the legislature by statute, rather than by this court by "judicial legislation," particularly in view of the fact that the legislature has shown no inclination to adopt uniform periods of limitation, but has instead adopted non-

uniform limitations for other similar actions, as illustrated above.[②]

Indeed, the 1973 Legislature rejected Senate Bill 134, which would have repealed ORS 12.115 (1), among other statutes, and would have adopted a seven year statute of "ultimate repose" from "the date of the act or omission on which the action is based" for all actions for damage or injury.

4. *The assumption by the majority that the "rationale" for the purposes of the statute of limitations is not only the same as between an action for negligent injuries and an action under § 402A, but is different as between either of such actions and an action for injuries caused by an "ultrahazardous" product, condition or activity.*

The thesis of the majority, to the effect that it would be "unreasonable" for "an action for negligent injury" to be subject to the 10 year limitation of ORS 12.115 (1), but an action under § 402A not to be subject to the same limitation, rests upon the assumption that the "rationale" for the purposes of that statute of limitations is not only the same as between such actions, but that such a "rationale" is not the same as between "an action for negligent injury" and an action for injury from a product that is defective in the sense that it is "ultrahazardous."

---

[②] This is in accord with the view expressed by this court in Bales for Food v. Poole, 246 Or 253, 256-257, 424 P2d 892 (1967), in which we said:

"* * * From our analysis of the problem we have concluded that there is a need for change in the law relating to the limitation of actions, but we think that the change should come through legislation rather than by a judicial effort to make refinements such as plaintiff suggests in this case."

See also Comment, Torts in Contract: A New Statute of Limitation, 52 Or L Rev 91, 92, 94, 97-98 (1972).

a. *The lack of "substantial differences" in the way in which "an action for negligent injury" and an action under § 402A is pleaded and tried is immaterial.*

In its "rationale" analysis the majority relies heavily upon the argument that:

"* * * [T]here is seldom much difference between the way a negligence case and a products liability case are tried. Plaintiff usually pleads one count in negligence and one count in products liability, as was done here. * * * Evidence which is relevant to one usually is relevant to the other. * * * The two issues are both related to approximately the same period of time—that is, the time of manufacture and sale. It is our conclusion that there is no substantial difference between the evidence that is used to prove the two types of cases insofar as the applicability of a statute relating to the reliability and availability of evidence is concerned."

Such a contention, it is submitted, "proves too much" because the same is also true as between "an action for negligent injury" and an action for injury resulting from an "ultrahazardous" product, condition or activity or from a nuisance, which the majority appears to concede to be *not* subject to the 10 year limitation of ORS 12.115 (1).

Indeed, it is common practice in products liability cases to plead in separate counts, if applicable, not only a theory of negligence and strict liability under § 402A, but also, if applicable, theories of warranty, "ultrahazardous" product, conduct or condition or activity, and nuisance.[9] As to the problems of proof

---

[9] See, for example, Brown, Adm'x v. Gessler et al, 191 Or 503, 510-511, 230 P2d 541 (1951); Gronn et ux v. Rogers Construction,

in a products liability case as between (1) negligence, (2) strict liability under § 402A, and (3) recovery for an "ultrahazardous" product, condition or activity, this court has recently said, in an opinion by HOLMAN, J., in *Phillips v. Kimwood Machine Co.*, 269 Or 485, 525 P2d 1033 (1974):

> "* * * It is necessary to remember that whether the doctrine of negligence, ultrahazardousness, or strict liability is being used to impose liability, the same process is going on in each instance, i.e., weighing the utility of the article against the risk of its use. Therefore, the same language and concepts of reasonableness are used by courts for the determination of unreasonable danger in products liability cases. * * * The difference between the *three* theories of recovery is in the manner in which the decisional functions are distributed between the court and the jury. * * *"
> (Emphasis added)

See also 2 Harper and James, The Law of Torts 799-801, § 14.4 (1956).

> b. *There are more "substantial differences" between "an action for negligent injury" and an action under § 402A than between an "action for negligent injury" and an action based upon an "ultrahazardous product, condition or activity."*

Despite these similarities in the practical problems of pleading and proof as between "an action for negligent injury" and an action in strict liability under § 402A of the Restatement of Torts 2d (1965), there are basic differences between the two actions. Even the majority recognizes that:

> "* * * [I]n a negligence case the reasonable-

Inc., 221 Or 226, 231-32, 350 P2d 1086 (1960); Jaco v. Baker, 174 Or 191, 198-199, 148 P2d 938 (1944); and National Automobile and Casualty Ins. Co. v. Mt. Pitt Co., 234 F Supp 477 (D Or 1964).

ness of the *defendant's actions* is in question while in a products liability case it is the *condition of the article* at the time of the sale which is in question." (Emphasis added)

As also stated by Prosser on Torts 672, § 103 (4th ed 1971):

"Strict liability has eliminated any question of negligence, and in the ordinary case has made evidence of the defendant's due care immaterial. * * *"

To the same effect, see *Markle v. Mulholland's, Inc.*, 265 Or 259, 271, 509 P2d 529 (1973). See also Prosser, *supra*, 658, n.57, and 661, §§ 98 and 99; Restatement of Torts 2d, § 402A, Comment *n* (1965), stating that the liability under § 402A "does not rest on negligence."

On the other hand, the underlying basis for an action to recover for an injury caused by an ultrahazardous product, condition or activity, or by what may more commonly be referred to as a nuisance, has a close relationship to other forms of strict liability. As stated in *Wights v. Staff Jennings, supra* at 310-311:

"* * * In such a case the basis for liability is the same as that employed in other cases imposing strict liability, as for example where the harm results from the use of high explosives, or the use of chemicals."

But regardless of the origin and basis for an action for damages caused by a product so defective as to be "ultrahazardous" or result in an "ultrahazardous condition," this court in *Wights v. Staff Jennings, supra* at 311, appeared to consider the theory of possible recovery in an action under § 402A for an injury caused by a "dangerously defective" product

not involving an "ultrahazardous" condition (which was not yet recognized by this court at that time) to be an extension of the theory under which recovery was recognized in that case for an injury caused by a product so dangerously defective as to result in an "ultrahazardous" condition.[4]

It follows, in my opinion, that an action under § 402A to recover for injuries caused by a "dangerously defective" product is more "substantially similar" to an action to recover for injuries caused by a product so dangerously defective as to be "ultrahazardous" or to result in an "ultrahazardous" condition than it is to "an action for negligent injury."

It also follows, for these reasons, that there is no proper basis for the holding by the majority that an action in strict liability under § 402A for personal injuries caused by a "dangerously defective" product must be subject to the 10 year limitation of ORS 12.115 (1) because of its "substantial similarities" to "an action for negligent injury," but that an action for personal injuries caused by a product so "dangerously defective" as to be "ultrahazardous" or result in an "ultrahazardous" condition must not be subject to such a 10 year limitation.

    c. *Proof in an "ultrahazardous" case is as "likely to be obscured by the passage of time" as the*

---

[4] In Wights v. Staff Jennings, 241 Or 301, 405 P2d 624 (1965), we said (at 311):

        "* * * A defective fuel system which permits the escape of gas fumes into the engine compartment of a boat can be found to create an extrahazardous condition for which the defendant could be held strictly liable. Whether a supplier of a defective product is strictly liable for personal injuries when his conduct is not extrahazardous we need not now decide."

*proof in a "dangerously defective" products liability case.*

The primary ground on which the majority challenges the validity of the foregoing reasoning is as follows:

"The fallacy of this reasoning [referring to the reasoning of this dissent] is in assuming that problems concerning the availability and credibility of evidence as well as other related factors are the same in all types of strict liability. The dissent's assumption is valid only if such problems relating to ultrahazardousness cases are the same as they are in products liability cases."

The sole and only basis offered by the majority in defense of its elaborate "rationale" analysis relating to "availability and credibility of evidence" on this critical issue is as follows:

"* * * Proof of the issues in [an ultrahazardousness] case is not so likely to be obscured by the passage of time. The principal issues are the extent of the damage, which necessarily is of recent vintage, and whether the activity which caused the damage is of the kind that is abnormally dangerous. The inherently dangerous propensities of liquid natural gas, dynamite, aluminum fumes, or of other substances and activities are matters that usually are readily capable of proof without regard to the passage of time. * * *"

The present statement by the majority may have been true in *McLane v. Northwest Natural Gas,* 255 Or 324, 467 P2d 635 (1970), the single case cited in support of that statement—a case involving an explosion of stored natural gas. It does not follow, however, that this broad statement by the majority is true in other types of "ultrahazardous" cases to any greater or lesser extent than in cases under § 402A.

The majority mentions aluminum fume cases as another example. Anyone familiar with the problems of proof in an aluminum fume case involving damage to trees, cattle, or human health knows that the statement by the majority is completely untrue in such a case. The "extent of damage" in such a case is not "necessarily * * * of recent vintage," but usually develops slowly over the course of years as minute amounts of fluorides are deposited upon the leaves of trees or upon vegetation consumed by cattle or humans or upon the soil from which it grows. Although the "dangerous propensities" of fluorides may be "well known" and "readily capable of proof," the problems of proof of the amounts of fluorides particulates discharged by an aluminum plant, not to speak of the problems of proof of the amount deposited on the soil, vegetation or trees on property several miles from such a plant and the amount ingested by cattle or human beings, as evidenced by the amounts found to be present in bones or internal organs, are infinitely more difficult of proof.[5]

In response to this, the majority says that:

"* * * One can draw all the similarities or dissimilarities one desires from the various theories of recovery, but the thing of importance is the similarity or dissimilarity of the evidence it takes to prove the respective theories. The fact remains that the evidence in products liability cases and

---

[5] Indeed, this court has previously recognized that there may be other cases in which a cause of action does not arise until some years after the act complained of. See Berry v. Branner, 245 Or 307, 310, 421 P2d 996 (1966). In that case the court cited Brush Beryllium Company v. Meckley, 284 F2d 797 (6th Cir 1960), as an example of such a case. In that case a plant had discharged fumes from 1941 to 1949, slowly causing a disease in the respiratory tract of the plaintiff which was not diagnosed until 1958.

negligence cases is identical, so the problems of the availability and credibility of evidence have to be the same. The contrary is true in *the average ultrahazardous case.* \* \* \*" (Emphasis added)

This assumes that there is such a thing as an "average ultrahazardous case." Such cases range in complexity and difficulty in proof from an aluminum fume case to a products liability case such as that involved in *Wights v. Staff Jennings.*

It need not be demonstrated that the "problems concerning the availability and credibility of evidence" in "the *average* ultrahazardous case" are necessarily more difficult than those involved in "an action for negligent injury" or in an action under § 402A involving a "dangerously defective product." What is important, however, is that this flat statement by the majority, without support by any empirical data, is a far too slender reed upon which to rest the contention by the majority that the legislature intended that an action in strict liability under § 402A for personal injuries caused by a "dangerously defective product" be considered to be "an action for negligent injury," so as to be subject to the 10 year limitation provided by ORS 12.115 (1), but intended that an action in strict liability for injuries caused by an "ultrahazardous product" not be subject to that limitation.

5. *The assumption by the majority that this case can only be treated as a "§ 402A case," and cannot also be considered as an "ultrahazardous product or condition" case.*

One of the primary grounds upon which the majority rests its opinion is that when the legislature adopted ORS 12.115 (1) in 1967 this court had not yet

"fully embraced Restatement (Second) of Torts § 402A" and that an action under § 402A is so substantially similar to "an action for negligent injury" that the legislature would have intended to regard it as "an action for negligent injury" for the purposes of ORS 12.115 (1) had it considered the problems at that time. Conversely, and as also previously stated, the majority has conceded, and with good reason, that the legislature did not intend to regard an "ultrahazardous" case as "an action for negligent injury" for the purpose of the 10 year limitation provided by ORS 12.115 (1).

In this entire course of reasoning the majority has implicitly assumed that this case must be treated as a "§ 402A case" and that liability in this case cannot be based upon the ground that plaintiff's death was caused by an "ultrahazardous" product or by an "ultrahazardous condition." This is another completely invalid assumption, in my opinion.

The complaint in this case alleged that the "Timesaver Speedbelt Sander" sold by defendant Star Machinery Company to the U.S. Plywood Corporation was "unreasonably dangerous for use by reason of the following defects in its manufacture, design and assembly":

> "1. The input system of the sander was designed in such a fashion as to allow plywood panels to enter the sander in an overlapping fashion or more than one at a time which resulted in the panels hanging up, and thereafter releasing or shooting out of the sander with great force and speed.
> "* * * * *
> "3. The sanding belt and rollers or drums were designed so as to rotate in the same direction as the direction of travel of the material being sanded

and to rotate at high speed and pressure causing the panels to catch against the sanding belt and to shoot the panels out of the machine with great force and speed."

From these allegations of fact it is clear that, if supported by proof, this plywood sanding machine was so "dangerously defective" as to create an "ultrahazardous condition," just as the butane fuel system in the boat in *Wights v. Staff Jennings, supra,* was so dangerously defective as to impose strict liability upon the seller upon the ground that it "create(d) an ultrahazardous condition." It follows for this reason, wholly independent from all other reasons discussed in this dissent, that because the majority has conceded that "ultrahazardous" cases are not subject to ORS 12.115 (1), neither is this case subject to the 10 year limitation imposed by that statute.

The majority does not deny that the facts alleged by plaintiff create an "ultrahazardous condition," but would dismiss this entire contention by the statement that it would "come as a great surprise to both litigants"; that plaintiff relied on § 402A; that "ultrahazardous" was "never mentioned by anyone"; and that this court will not "construe plaintiff's complaint in a manner which he did not intend and for which he makes no contention."

It is true that neither plaintiff's complaint nor plaintiff's brief described the facts alleged in his complaint by the label "ultrahazardous." He did, however, describe the conditions as "unreasonably dangerous." Plaintiff's brief contended that the question to be decided in this case is whether ORS 12.115 (1) applies "to actions based on strict liability" and that the statute "does not bar plaintiff's action for strict li-

ability in tort." In support of that contention plaintiff cited § 402A. He also cited Prosser 657-58, § 98, on "strict liability in tort," which is not limited to cases under § 402A. His position was that ORS 12.115 (1) has no application to *any* strict liability cases, including *both* § 402A and "ultrahazardous" cases.

Defendant, in response, makes no contention that ORS 12.115 (1) applies to only § 402A cases, and not to "ultrahazardous cases," but contends flatly that *both are subject to that statute* and, indeed, that it was intended to apply to *all actions in tort.*

Thus, plaintiff had no reason to contend on this appeal that even if strict liability cases under § 402A are subject to ORS 12.115 (1), strict liability cases involving "ultrahazardous" products, conditions or activities are not subject to it. Indeed, it will come as more of a surprise to both parties to learn that the majority has decided this case upon a "theory of [non]recovery * * * never mentioned by anyone" in that the majority, while conceding that both § 402A and "ultrahazardous" are both types of strict liability, goes on to hold that some strict liability cases (§ 402A cases) are subject to ORS 12.115 (1), while other strict liability cases (including "ultrahazardous" cases) are not.

In recent years in products liability cases this court, in recognition of the admittedly confused state of the law on this subject, has consistently applied the rule that a cause of action is comprised of the facts alleged in the complaint which entitle the plaintiff to recover on *some* legal theory and that merely because he has placed the "wrong label," on the facts alleged, or has failed to place the "right label" upon them, does not bar him from recovery, even under a theory

of recovery not recognized or contended for by either party to this court.

Thus, the complaint in *Wights v. Staff Jennings, supra,* did not allege that the fuel system resulted in an "ultrahazardous condition"—the theory of liability adopted by this court in that case. Instead, it alleged, as in this case, that the system was "dangerous," as a result of the facts alleged. The court had sustained a demurrer to an earlier complaint on the ground that the complaint improperly joined a cause of action for breach of warranty and for negligence. Defendant contended that this was a misjoinder and that there was no basis for recovery on either theory. This court held that under the facts of that case plaintiff was entitled to recover on a theory of strict liability for creating an "ultrahazardous" condition.

Similarly, in *Markle v. Mulholland's, Inc., supra,* this court (at 263) stated that the complaint "purports to state a cause of action for breach of warranty." Neither party made any mention of § 402A in their briefs to this court. Nevertheless, the court held that plaintiff was entitled to recover under § 402A, saying that:

> "* * * In previous cases, because of the evolving nature of the law in this field, we have treated similar complaints as stating as broad and all-encompassing a cause of action as it was possible to state for strict liability arising out of the sale of goods. * * *"

To the same effect, see *Redfield v. Mead, Johnson & Co., supra* at 278; *McGrath v. White Motor Corp.,* 258 Or 583, 593-94, 484 P2d 838 (1971); and *Vanek v. Kirby,* 253 Or 494, 502, 450 P2d 778, 454 P2d 647 (1969).

This is the first time in a products liability case, at least in recent years, that the court has refused to permit recovery to a plaintiff for not attaching the correct "label" to his claim for recovery, even when alleging or proving facts entitling him to recover. Ironically, the majority does so by adopting a theory for denial of recovery which was never advanced by defendant or mentioned by either party on this appeal.

To apply ORS 12.115 (1) in this case leaves this plaintiff without a remedy. In my opinion, the strong reasons of public policy arising from the need to protect consumers, workmen and other persons injured by defective products in an industrial society, whether such products are "dangerously defective" or "ultrahazardous," requires that this court should not impose limitations upon such recovery in an action under § 402A to recover for personal injuries caused by a "dangerously defective" product in the absence of demonstration that it was "clearly" intended by the legislature that such an action be included within the provisions of a statute which by its express terms applies solely to actions for "negligent injury."

For these reasons I must respectfully dissent.