Argued May 23, resubmitted In Banc September 7,
affirmed September 17, 1979

# PHOTO-ART COMMERCIAL
# STUDIOS, INC.,
*Respondent-Cross-Appellant,*
*v.*
# HUNTER, et al
*Appellants-Cross-Respondents.*

(No. A7804-06692, CA 11709)

600 P2d 471

Mary J. Deits, Assistant Attorney General, Salem, argued the cause and filed the briefs for appellants-cross-respondents. With her on the briefs were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Michael J. Walsh, Portland, argued the cause for respondent-cross-appellant. With him on the brief was Stephen J. Connolly, Portland.

Before Thornton, Presiding Judge, and Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Plaintiff, a corporation, initiated this proceeding as a taxpayer[1] for a declaration that a contract between defendants Oregon Department of Transportation (the state) and Odyssey Productions (Odyssey) for the production of three films was illegal and void because it was not let in compliance with the competitive bidding procedures for public contracts (ORS 279.011 *et seq.*) In the alternative, plaintiff sought a declaration that the contract was void because the state abused its discretion in failing to investigate alleged misrepresentations by Odyssey which came to the state's attention after the contract was made. Plaintiff also sought an injunction against continuing performance of the contract by Odyssey and any payment to Odyssey by the state.

The trial court declared the contract void on the ground that it was in violation of the requirements of ORS chapter 279 and enjoined production of the second and third films. The court did not enjoin completion of the first film or payment for it. Defendants appeal, arguing that the contract was not subject to the requirements of the competitive bidding law, and plaintiff cross-appeals.

In January, 1977, the state decided to have a professional film production company make films of the construction of the Interstate 205 Columbia River Bridge. The state was to get a copy of all footage shot, and three "final" films were to be produced. The first and second were to be 20 minute films of the substructure and superstructure work, respectively, for technical audiences. The third was to be a 45 minute film about the entire project for general audiences. The state did not advertise for bids. The film proposal did, however, attract newspaper publicity, and five or six

---

[1] Plaintiff did not seek to establish standing as one whose lower bid had been rejected. The state conceded that plaintiff had standing as a taxpayer.

film production companies contacted the state and expressed interest in the project.

The state developed a project prospectus and sent a copy to each of those companies, along with a request for bids. The state received five bids, including one from plaintiff and one from Odyssey. A selection committee composed of defendants Hunter, Schroeder, Rulien, Hart and Hardt (and advised by defendant Bell) listened to presentations by each of the bidders. They chose Odyssey for the project, despite the fact its bid was not the lowest one. Hunter later explained the selection of Odyssey:

> "After hearing the presentations, the committee considered factors such as the professional competence of the personnel, depth and quality of staff, experience with similar projects, quality of presentation films, understanding of the project, stability of the firm, et cetera, and unanimously selected Odyssey Productions, Inc."

We need not detail either the differences between plaintiff's and Odyssey's proposals or the permissible scope of discretion under the public contracting law to choose a bid which is not the lowest. Defendants concede that if the competitive bidding requirements of ORS 279.011 *et seq* were applicable, the contract was awarded in violation of them. Defendants argue, however, that those requirements were not applicable and that the contract was let in compliance with the requirements applicable to personal service contracts.

ORS 279.015 provides that all "public contracts" (with some exceptions which the state does not contend are applicable here) "shall be based on competitive bids." ORS 279.025 sets forth the requirements for advertising for bids. ORS 279.029(1) requires that public contracts be awarded to the "lowest responsible bidder," *i.e.,*

> "*** [T]he lowest bidder who has substantially complied with all prescribed public bidding proce-

dures and who has not been disqualified by the public contracting agency under ORS 279.037."[2]

ORS 279.011(1) defines a "public contract" as

"*** any purchase, lease or sale by a public agency of personal property, public improvements or services other than agreements which are *exclusively* for personal service." (Emphasis supplied.)

■ Defendant makes several arguments to the point that the contract in question is not within the definition of "public contract." Some of them overlook the basic principles that in interpreting a statute we begin with the language used and are bound to give words of common usage their natural, ordinary meaning unless that leads to absurd or unreasonable results. *Johnson v. Star Machinery Co.,* 270 Or 694, 530 P2d 53 (1974); *Wimer v. Miller,* 235 Or 25, 383 P2d 1005 (1963). Decisions from other states having different statutory language are not helpful, nor are Oregon decisions based on different statutory language, except insofar as they suggest the unreasonableness of a literal interpretation.

■ Defendants concede that the contract involved the purchase of personal property (the films) as well as services, but they contend this was nonetheless a contract exclusively for personal services. They argue that the term "agreements which are exclusively for

---

[2] ORS 279.037(1):

"(1) A public contracting agency may disqualify any person as a bidder on a public contract if the agency finds:

"(a) The person does not have sufficient financial ability to perform the contract. If a bond is required to insure performance of a contract, evidence that the person can acquire a surety bond in the amount and type required shall be sufficient to establish financial ability;

"(b) The person does not have equipment available to perform the contract;

"(c) The person does not have key personnel available of sufficient experience to perform the contract; or

"(d) The person has repeatedly breached contractual obligations to public and private contracting agencies."

[211]

personal services" should not be given its natural, ordinary meaning because

"[i]f read literally, this could result in the interpretation that personal services contract selection procedure would only apply to a personal service contract in which no supplies are paid for or no physical product results from the services. Such an interpretation would render the provisions relating to personal services contracts [ORS 279.051][3] virtually meaningless. Respondent submits that the reason the term 'exclusively' was used in the statute was to insure that the authority given to public agencies to let personal services contracts was not used to circumvent the competitive bidding law: for example, to prevent an agency from treating the contract as a personal services contract when the personal services were only an incidental part of the contract."

Defendants would thus have us read the word "exclusively" as "substantially" or "primarily." We see no reason why the legislature would not have used one of those terms if that is what it meant. However, we need not decide whether the term "exclusively" can be given its full literal meaning in all cases, or whether in some cases to avoid unreasonable results we should overlook the furnishing of minimal supplies incidental to personal services or the preparation of a report or summary of services performed (even though those things may be personal property.)[4] We need only

[3] ORS 279.051:

"(1) Public agencies may enter into contracts for personal services. The provisions of this section do not relieve the agency of the duty to comply with ORS 291.021 or applicable city or county charter provisions. Each public agency shall create procedures for the screening and selection of persons to perform personal services.

"(2) The board, either upon complaint or on its own motion, may investigate the screening and selection procedures of any state agency as defined in subsection (7) of ORS 291.002. The board may, for good cause shown, order a state agency to cease and desist and to adopt and follow screening and selection procedures which may be prescribed by the board."

[4] The Public Contract Review Board has adopted the following rule:

"Contracts for personal services. Such services may include incidental materials such as written reports, architectural or engineering renderings and similar supplemental materials." OAR 127-10-010.

determine whether the application of the competitive bidding requirements to this contract leads to an absurd or unreasonable result or to one that is clearly inconsistent with the statutory scheme as a whole. We find that it does not.

The object of the contract was the purchase of films to be produced by the filmmaking company with its equipment. Defendants concede that plaintiff was qualified to produce the films and that there was little to distinguish its proposal from Odyssey's. One print of all film exposed was to be sent to the project engineer "as soon as practical after shooting of the film" and was to become the property of the state as a permanent record. Six prints of each final film were to be provided. The agency's objective was to obtain for its use the films themselves. We conclude that the legislature intended such a contract to be competitively bid unless the public contracting agency demonstrated it was within one of the exemptions of ORS 279.015.

The only issue raised by plaintiff's cross-appeal is whether the court erred in ruling against plaintiff on its second cause of action, which asserted an alternative ground for a declaration of voidness. In light of our ruling on defendants' appeal, we do not reach that issue.

Affirmed.