Argued and submitted September 20, 1995; resubmitted In Banc June 12, reversed and remanded in part; otherwise affirmed August 28, 1996

# NORTHWEST REFORESTATION CONTRACTORS ASSOCIATION, INC.;

C & H Reforesters, Inc.; Grayback Forestry, Inc.; Hugo Reforestation, Inc.; Miller Timber Services, Inc.; Rincon Reforestation, Inc.; Second Growth, Inc.; Shiloh Forestry, Inc.; Skookum Reforestation, Inc.; Timber West, Inc.; and Strata Industries, Inc., *Appellants,*

*v.*

## SUMMITT FORESTS, INC., *Respondent.*

(16-93-09532; CA A86294)

922 P2d 1240

In Banc*

George W. Kelly argued the cause and filed the briefs for appellants.

Judith Giers argued the cause for respondent. With her on the brief were William F. Gary and Harrang Long Gary Rudnick P.C.

D. Michael Dale filed a brief amicus curiae for Oregon Legal Services Corporation.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Janie M. Burcart, Assistant Attorney General, filed a brief amicus curiae for Bureau of Labor & Industries.

EDMONDS, J.

Warren, J., concurring in part and dissenting in part.

---

\* De Muniz, J., not participating.

## EDMONDS, J.

Plaintiffs seek an injunction and damages under ORS 658.475, which provides remedies against farm labor contractors who violate certain statutes and administrative rules. The trial court granted summary judgment to defendant, ORCP 47, and plaintiffs appeal. We reverse in part.

Defendant is a large reforestation contractor working on federal lands in Oregon. In each of the last several years, defendant or Summitt Enterprises, Inc.,[1] its predecessor, received federal reforestation contracts. As a reforestation contractor, defendant is subject to ORS 658.475, which provides:

"The Commissioner of the Bureau of Labor and Industries, or any other person, may bring suit in any court of competent jurisdiction to enjoin any person from using the services of an unlicensed farm labor contractor or to enjoin any person acting as a farm labor contractor in violation of ORS 658.405 to 658.503 and 658.830, or rules promulgated pursuant thereto, from committing future violations. The court may award to the prevailing party costs and disbursements and a reasonable attorney fee. *In addition, the amount of damages recoverable from a person acting as a farm labor contractor with regard to the forestation or reforestation of lands who violates ORS 658.410, 658.417(3) or (4) or 658.440(3)(e) is actual damages or $500, whichever amount is greater.*" (Emphasis supplied.)

Plaintiffs are also reforestation contractors subject to ORS 658.475. In November 1993, they filed a complaint against defendant, which was eventually replaced with a third amended complaint that frames the issues for purposes of summary judgment. The third amended complaint provides, in part:

"5.

"Defendant is a foreign corporation doing business and acting as a farm labor contractor as defined in ORS 658.405

---

[1] Summitt Enterprises and defendant are both owned by Scott R. Nelson and his wife. Summitt Enterprises apparently ceased doing any significant reforestation business at the same time that defendant became active.

in the State of Oregon, including Lane County. Defendant is one of the largest reforestation contractors to perform work in Oregon. Defendant was awarded 24 federal contracts worth a gross value of $1.14 million on public lands in Oregon in 1993 and Defendant did not have an Oregon workers' compensation policy to cover its Oregon workers.

"6.

"Defendant has violated the requirements of ORS 658.417(4) by failing to provide workers' compensation insurance for at least 99 individuals who perform forestation or reforestation activities in the State of Oregon.

"7.

"Defendant has violated the requirements of ORS 658.417(3) by failing to provide to the Commissioner of the Bureau of Labor and Industries a certified copy of all payroll records for work labor done as a farm labor contractor at the time prescribed by the Commissioner.

"8.

"The actions of Defendant have aggrieved [plaintiffs] by providing to Defendant an unfair competitive advantage, including a bidding advantage because Defendant does not properly report and pay as much workers' compensation premiums as do contractors who provide Oregon workers compensation coverage. * * * Several of the Plaintiffs lost contracts to Defendant because of Defendant's illegal activities.

"9.

"Pursuant to ORS 658.475 Defendant is liable for $500 statutory damages for each of Defendant's violations, for a total of $50,000.00, and for Plaintiffs' attorney fees and costs.

"10.

"Pursuant to ORS 658.475 Defendant should be enjoined from acting as a Farm Labor Contractor in violation of ORS 658.405 to 658.503. An injunction is necessary

to prevent future violations in view of the foregoing and following allegations of fact * * *:

"* * * * *

"(e) Defendant utilizes illegal aliens as workers."

■ In August 1994, defendant moved for summary judgment. In support of its motion for summary judgment, defendant offered uncontroverted evidence that it has had Oregon workers' compensation insurance in effect since October 1993, and that that coverage had continued since that time. It also offered evidence that it was in compliance with ORS 658.417(3),[2] ORS 658.417(4)[3] and ORS 658.440(3)(d).[4] Plaintiffs offered evidence in contravention of defendant's motion. That evidence demonstrated that defendant was often late in filing required payroll reports in 1993 and 1994 and that, during that time, the Border Patrol made several raids on defendant's work sites. As a result of those raids, the Immigration Service took a number of defendant's workers and those of its subcontractors into custody as illegal aliens. In each instance, there is evidence from which a trier of fact could reasonably infer that violations were continuing to occur in November 1993, the date plaintiffs filed their complaint, and thereafter. As a result, we conclude that the trial court erred in granting summary judgment to defendant on those claims that seek injunctive relief based on violations of ORS 658.417(3) and ORS 658.440(3)(d). *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996).

The remaining claim focuses on the allegation that defendant was entitled to injunctive relief and damages

---

[2] ORS 658.417(3) requires that reforestation contractors provide payroll records to the Commissioner of the Bureau of Labor and Industries (Commissioner) when a contractor pays employees directly at such times and in such form as the Commissioner may prescribe.

[3] ORS 658.417(4) requires a reforestation contractor to provide workers' compensation insurance for those individuals who perform manual labor and forestation or reforestation activities.

[4] ORS 658.440(3)(d) provides that no person acting as a farm laborer contractor shall knowingly employ an alien not legally present or legally employable in the United States.

under ORS 658.475 because it failed to provide workers' compensation insurance for individuals who performed forestation or reforestation activities in the State of Oregon as required by ORS 658.417(4). As mentioned previously, the uncontroverted evidence establishes that, at the time that plaintiffs filed their complaint, defendant was in compliance with the requirements of ORS 658.417(4) and had been for over a month. Although plaintiffs concede that defendant was in compliance with the statute as of November 1993, and defendant continued to be in compliance at the time of the summary judgment hearing, they argue that the considerable evidence that defendant was violating ORS 658.417(4) before October 1993, entitles them to injunctive and damage remedies under ORS 658.475 and precludes summary judgment for defendant.

■■     Plaintiffs' argument frames an issue of statutory interpretation: Does ORS 658.475 afford a remedy for past violations? In interpreting a statute, our goal is to discern the intent of the legislature. If the meaning of a statute is clear on its face, our inquiry goes no further. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). In order for a party to be entitled to the additional remedy of damages under ORS 658.475, the person against whom the remedy is sought must be "acting * * * *in violation*" of the act or the administrative rules promulgated pursuant to the statute. (Emphasis supplied.) The statute is clear on its face as to the time frame to which it applies. The requirement that the contractor be "acting in violation" of the enumerated statutes or rules is in the present tense. It does not authorize an injunction or damages against a person who has violated the statutes or rules in the past. There is nothing in the record to suggest that defendant did not have coverage or was threatening to drop the Oregon coverage it had procured at the time the complaint was filed or thereafter.[5] As a result,

---

[5] The dissent argues that we misconstrue the meaning of the word "acting" in the statute because we fail to characterize defendant's conduct as part of an ongoing series of violations from which it could be inferred that there will be future violations. However, the dissent fails to point to any evidence from which it could be inferred that defendant intended at the time of the complaint to violate the statute in the future, having been in compliance with Oregon law *before the complaint was filed*. Moreover, assuming that general principles of equity apply to the statutory remedies in ORS 658.475, plaintiffs must show existing violations or an intent on the part of defendant to commit future violations at the time of the complaint.

there is no genuine issue of material fact as to whether defendant was acting in violation of ORS 658.417(4) by not having workers' compensation insurance for its employees in November 1993, and consequently, defendant is entitled to summary judgment on that claim.

■ Nonetheless, the dissent asserts that under the language of the statute, plaintiffs may bring a claim for damages for past violations of ORS 658.417(4), and it relies on an analysis that equates the statute to general equitable principles. The reliance on equitable principles is misplaced. ORS 658.475 is solely a creation of the legislature. There is nothing on the face of the statute that supports the dissent's analysis. Even if an argument can be made that the statute is unclear on its face, there is nothing in the legislative history that suggests that the legislature intended to adopt general equitable principles or create a private statutory cause of action for damages for past violations when it enacted the statute.

Finally, even if the statutory claim is treated as an equitable claim, the case law does not support the dissent's reasoning. At common law, the availability of an award of damages in a case in equity depended on whether plaintiff was entitled to relief at the time of the filing of the suit. In *Oregon Growers' Co-op. Assn. v. Riddle*, 116 Or 562, 569, 241 P 1011 (1926), the court explained:

> "When a court of equity has acquired jurisdiction over some portion of a controversy, it will proceed to decide the whole issue and award complete relief, though the rights of the parties are strictly legal and the final remedy is of a kind that may be granted by a court at law. There are circumstances under which a court of equity will grant compensation in money, ordinarily obtainable at law. One of these cases is where the plaintiff established his equity, but equitable relief is found impracticable * * *.
>
> " 'The test of the jurisdiction of a court of equity is *whether facts exist at the time of the commencement of the action* sufficient to confer jurisdiction on the court. *If plaintiff is then entitled to the aid of equity* the jurisdiction will not be defeated by subsequent events which render equitable relief unnecessary or improper.' " (Emphasis supplied; citations omitted; quoting 21 CJS, *Equity*, § 123.)

In this case, defendant was not acting in violation of ORS 658.417(4) at the time the complaint was filed. Even if the statute is viewed as a statutory expression of equitable principles, it does not afford relief under the facts of this case.

In sum, the dissent's interpretation of ORS 658.475 would create a statutory claim for damages out of whole cloth, even when there was no evidence to support entitlement to injunctive relief. That interpretation is inconsistent with the text and context of the statute. Because defendant had Oregon workers' compensation insurance in effect at the time plaintiffs filed their complaint and because they have offered no evidence on summary judgment that would entitle them to injunctive relief on that claim, there is no legal basis for their claim for the "additional" remedy of damages. On remand, plaintiffs' claims under ORS 658.417(3) and ORS 658.440(3)(d) should be litigated as separate claims for injunctive relief. In the event that plaintiffs are successful in proving that defendant was acting in violation of those statutes at the time plaintiffs filed their complaint, then the court may consider whether plaintiffs are entitled to damages on those claims as additional relief.

Reversed and remanded as to claims under ORS 658.417(3) and ORS 658.440(3)(d); otherwise affirmed.

**WARREN, J.,** concurring in part and dissenting in part.

Although I concur in much of the majority's opinion, I cannot join in its misreading of ORS 658.475 to deny plaintiffs a claim for damages. The majority effectively guts the statute by giving reforestation contractors a foolproof method for avoiding private actions for their violations of the Farm Labor Contractors Act. All a contractor now has to do is to suspend its violations before a private party actually files a lawsuit. The contractor will then be free, once the trial court dismisses the private action, to resume its violations until the next lawsuit threatens. It will never risk an injunction, and it will never have to pay damages for the harm that its violations have caused. That is not the protection that the legislature intended to give those who work for or otherwise deal with reforestation contractors.

ORS 658.417(4) requires defendant to provide workers' compensation coverage for each individual who performs manual labor on its forestation or reforestation activities, without regard to defendant's business form or to its contractual relationship to the workers. ORS 658.475 provides a private action to enforce that obligation by an injunction and an award of damages. The record is replete with evidence that both defendant and Summitt Enterprises, Inc., its predecessor,[1] have conducted extensive reforestation work in Oregon while violating that requirement.[2] Despite that evidence, which I summarize below, the majority holds that the fact that defendant was complying with the law at the moment that plaintiffs filed this case defeats their claim.

SAIF, the compensation carrier for Summitt Enterprises, audited its books for 1989 and 1990, assessed Summitt Enterprises $275,000 for unpaid premiums and canceled its coverage. Summitt Enterprises paid the assessment. Its owners thereafter conducted their business through defendant, receiving workers' compensation coverage from WAUSAU through the assigned risk pool. In 1992, WAUSAU determined that defendant's books were not independently verifiable and auditable, assessed it $443,000 in unpaid premiums and canceled its coverage. Defendant disputed the assessment; the dispute was unresolved at the time of the trial court proceedings in this case.

After losing its WAUSAU coverage, defendant moved its headquarters to Hornbrook, California, just across the Oregon border from its previous location, and obtained California workers' compensation coverage at a much lower rate than Oregon contractors paid. Although it continued to bid on and receive reforestation contracts in Oregon, it purported to perform them either through subcontractors who were licensed in Oregon or by using California workers at

---

[1] Defendant and Summitt Enterprises are owned by the same people; Summitt Enterprises became inactive in the reforestation business at the same time that defendant became active.

[2] Because workers' compensation coverage is one of the largest expenses for reforestation contractors, defendant's failure to comply forced those contractors who did obtain Oregon coverage to carry an extra burden from which defendant was free.

temporary workplaces in Oregon; such workers would not require Oregon coverage. ORS 656.126(2), (6).

In early 1993, the Workers' Compensation Division investigated whether defendant was complying with the Oregon Workers' Compensation Law. As part of its investigation, it interviewed the workers on one of defendant's crews in Oregon and determined that they were Oregon subject workers. At the conclusion of the investigation, the Division issued an order finding defendant not to be in compliance from September 7, 1992, through May 24, 1993, and assessing the maximum $1,000 penalty. Although defendant initially disputed the assessment, it obtained Oregon coverage on October 17, 1993. At the same time, it entered into a stipulation with the Division, under which (1) the Division amended the order to find that defendant was not in compliance during the entire period that defendant was without Oregon coverage; (2) defendant permitted the order to be become final without seeking review; (3) defendant paid the $1,000 penalty; but (4) defendant formally denied that it was not in compliance.[3]

In short, the trier of fact could find that over the course of a few years defendant and its predecessor twice failed to pay large amounts of workers' compensation premiums, that in order to avoid complying with the Oregon Workers' Compensation Law defendant moved to another state while continuing to conduct business as usual in Oregon, that it attempted to hide its use of Oregon subject workers from the regulatory authorities and that it complied with the law only when those authorities forced it to do so. That evidence could lead the trier of fact to conclude that defendant had engaged in a pattern of violations and that there was a threat that its compliance at the time that this case was filed would cease once the pressure to comply diminished.

---

[3] There is also evidence that defendant listed Oregon residents under California addresses in order to avoid paying Oregon compensation premiums for them. A worker's residence is one of the factors used to determine whether the worker is an Oregon subject worker. *Northwest Greentree, Inc. v. Cervantes-Ochoa,* 113 Or App 186, 189-90, 830 P2d 627 (1992).

Despite these facts, the majority denies plaintiffs' claim under ORS 658.475 for the workers' compensation violations on the ground that, at the time of the original complaint, defendant was not "acting as a farm labor contractor in violation" of ORS 658.417(4). It treats the issue as whether ORS 658.475 "afford[s] a remedy for past violations," 143 Or App at 144, stating that "[t]here is nothing in the record to suggest that defendant * * * was threatening to drop the Oregon coverage it had procured at the time the complaint was filed or thereafter." *Id.* The majority fails to recognize that the evidence would permit the trier of fact to find that defendant *was* acting in violation at the time of the original complaint, even if at the moment it was temporarily in compliance.

In holding that defendant was not acting in violation of ORS 658.417(4), because it had come into compliance with the law less than a month before the plaintiff association filed the lawsuit, the majority ignores the normal meaning of the term "acting." The term refers to a continuing process, not to a static moment in time. Thus, when we say that a person is "acting" in a play, we refer to a process that extends from the opening to the final curtains, including intermissions and scenes when the person's character is not on stage. When we say that a person is "acting" in an office, we include the period when the person is sleeping or otherwise engaged in nonofficial activities. Similarly, when we say that a person is "playing" a game, we refer to a process that extends from the time that the game begins until it is over, including times out and other breaks in the action. Thus, "acting" in violation of the Act is a course of conduct that may continue despite a temporary respite. The very nature of an injunction recognizes that fact.

The essential purpose of an injunction is to prevent a threatened injury, "to stay the lawless hand before it strikes the blow." *Wiegand v. West*, 73 Or 249, 254, 144 P 481 (1914). A court cannot enjoin conduct already committed, *Garratt-Callahan Co. v. Yost*, 242 Or 401, 402, 409 P2d 907 (1966), but must be able to act when the harm is only threatened. The provision in ORS 658.475 for an injunction makes sense, thus, only if "acting * * * in violation" describes a process,

thereby allowing a court to enjoin a person who is temporarily complying with the law, if there is a threat of future violations. Although the statute appears to make proof of past violations an essential part of proving threatened harm, it does not condition an injunction on proof of violations at the precise time that the court enters the injunction.[4] The majority's holding that there was no equitable jurisdiction because defendant was in compliance at the time of the original complaint thus ignores both that "acting" is a process and that the purpose of an injunction is to prevent future harm.

The majority also argues that ORS 658.475 is solely a creature of the legislature and that any reliance on general equitable principles in construing the statute is misplaced. 143 Or App at 145. It ignores the fact that an "injunction" is not a new concept that the legislature created out of thin air for the purposes of this statute; rather, it is a well-known equitable remedy with centuries of learning behind it.[5] Under the relevant Supreme Court precedent, the legislature, in authorizing an injunction, both invoked the jurisdiction of a court of equity and adopted the normal criteria for that remedy, except to the extent that the statute clearly modified them. To the extent that it did not modify the normal criteria, they apply to actions under ORS 658.475.[6]

In *State (PUC) v. O.K. Transfer Co.*, 215 Or 8, 330 P2d 510 (1958), the issue was whether the Public Utilities Commissioner was entitled to an injunction under *former* ORS 767.465(1), *repealed by* Or Laws 1971, ch 655, § 250, which authorized the Commissioner to seek an injunction

---

[4] In this respect the statute sets forth criteria that are similar to those for enjoining a continuing trespass. Those criteria require both a previous trespass and the threat of repeated trespasses but do not require that the defendant be trespassing at any specific moment. *See Seufert Bros. v. Hoptowit et al.*, 193 Or 317, 328, 237 P2d 949 (1951), *cert den* 343 US 926 (1952); *Micelli v. Andrus*, 61 Or 78, 89-90, 120 P 737 (1912).

[5] Indeed, the statute appears to adopt the equitable principles that directly apply to this case.

[6] Treating statutory injunctions as equitable proceedings, modified by the statutory requirements, is consistent with the rule that a court construes a statute in light of the existing law. *See, e.g., Swarens v. Dept. of Rev.*, 320 Or 326, 333, 883 P2d 853 (1994) (legislature presumed to know of prior enactments); *Simpson v. First Nat. Bank*, 94 Or 147, 157-58, 165, 185 P 913 (1919) (construing Negotiable Instruments Act in light of the law merchant).

against a person who "is engaged or about to engage" in acts that would violate certain statutes. 215 Or at 13-14. The defendant argued that the Commissioner was not entitled to an injunction because he had failed to show irreparable harm or the absence of an adequate remedy at law. Those are normal criteria for an injunction. The court disagreed, because the statute expressly authorized injunctive relief based on the showing that the Commissioner did make. 215 Or at 14-15. In its discussion, the court assumed that the normal equitable limits on issuing an injunction would apply in the absence of the statutory modifications. 215 Or at 15-18.[7]

The majority is thus wrong in holding that the complaint was insufficient to invoke the court's equitable jurisdiction to issue an injunction under ORS 658.475. I agree, however, that by the time the court granted defendant's motion for summary judgment there was no longer any basis for finding that defendants were acting in violation of the Act. By then defendant had complied with the Oregon workers' compensation law for the major portion of a year, and there was no evidence that it was still threatening to drop that coverage.[8]

The loss of a basis for an injunction does not mean, however, that plaintiffs had also lost their claim for damages. The statute provides that

"[i]n addition, the amount of damages recoverable from a person acting as a farm labor contractor with regard to the forestation or reforestation of lands who violates * * * ORS

---

[7] The requirement in ORS 658.475 that the defendant be "acting * * * in violation" has essentially the same meaning as the requirement in *O.K. Transfer* that the defendant be "engaged or about to engage" in the prohibited practice. "Acting," that is, includes both being "engaged" in an activity (actually doing it) and being "about to engage" in the activity (on the threshold of doing it).

[8] Plaintiffs argue that defendant under reported the number of its workers and thus paid lower premiums than it should have paid. Whether or not plaintiffs are correct is irrelevant. Defendant's compensation coverage, as a matter of law, ensures payment of all claims that its workers may have without regard to whether defendant properly reported them to its insurer or to the Bureau of Labor and Industries and without regard to whether defendant paid the correct premium. *See* ORS 656.419(1) (insurer's guaranty contract is assumption of liability, without monetary limit, for all compensation that may become due to employer's subject workers and their beneficiaries). Any failure to pay premiums for the correct number of workers is a matter between defendant and its carrier; it is not a violation of the obligation in ORS 658.417(4) to provide compensation coverage to all workers.

658.417 * * * (4) * * * is actual damages or $500, whichever amount is greater."

That provision does not create a right to damages. Rather, it assumes the existence of the right and states the amount of damages that the plaintiff may recover. It thus recognizes an equity court's authority, once it has acquired jurisdiction, to award damages, even if equitable relief turns out not to be appropriate.

Courts of equity have long had the power to award damages when a plaintiff is unable to obtain an injunction. Once equity obtains jurisdiction, it will retain it to grant full relief, including relief that would otherwise be obtainable in a court of law. *Rexnord Inc. v. Ferris*, 55 Or App 127, 134, 637 P2d 619 (1981), *rev'd on other grounds* 294 Or 392, 657 P2d 673 (1983); *Papadopoulos v. Bd. of Higher Ed.*, 14 Or App 130, 178 n 12, 511 P2d 854, *rev den* (1973), *cert den* 417 US 919 (1974). Thus an equity court may award damages for interference with an exclusive franchise even after the legislature repeals the statute making the franchise exclusive and thereby removes the basis for an injunction. *Fisk v. Leith*, 137 Or 459, 464, 467, 299 P 1013, 3 P2d 535 (1931). In the same way, an equity court may award damages for a public nuisance even after the defendant removes the nuisance, thus making an injunction inappropriate. *Bernard v. Willamette Box & Lumber Co.*, 64 Or 223, 233, 129 P 1039 (1913). The cases seem to require no more than a possible basis for an injunction at the time that the plaintiff filed the suit.

After authorizing an injunction in its first part, ORS 658.475 provides, *in addition*, that "the amount of damages recoverable from a person acting as a [reforestation contractor] is actual damages or $500, whichever amount is greater." That provision does not purport to create a right to damages; rather, it declares what those damages shall be. It thus treats damages as an incident of equitable relief, which includes the potential for damages even when the plaintiff fails to obtain the equitable relief that it originally sought. The text of the statute, thus, is inconsistent with treating damages as contingent on actually receiving that relief.[9]

_____

[9] ORS 658.475 recognizes a basis for damages that is distinct from both ORS 658.453(4), which gives a *worker* a direct claim against the farm labor contractor

Because the facts could have justified the issuance of an injunction when the complaint was filed, the complaint invoked the court's equitable jurisdiction. Because ORS 658.475 expressly contemplates that plaintiffs may recover damages in the same circumstances that they could do so in any other proceeding for an injunction, plaintiffs are entitled to proceed with their claim for damages. The majority errs in affirming the dismissal of this part of plaintiff's claim.

Riggs, Leeson and Armstrong, JJ., join in this dissent.

for damages that are the result of the violation of certain statutes, if the worker first files with the Bureau of Labor and Industries, and from ORS 658.415(8) through (12), which establish the procedures for making a claim against a farm labor contractor's bond.