Argued and submitted May 17, affirmed June 2, 1999

## Jan JAHNKE,
*Petitioner,*

*v.*

## US WEST COMMUNICATIONS,
Providence Vantage and
Department of Consumer and Business Services,
*Respondents.*

### (H97-224; CA A102329)

983 P2d 1053

Robert W. Pardington argued the cause for petitioner. With him on the brief was Pozzi Wilson Atchison LLP.

Karen O'Kasey argued the cause for respondent US West Communications. With her on the brief was Schwabe, Williamson & Wyatt, P.C.

Vera Langer argued the cause for respondent Providence Vantage. With her on the brief was Scheminske, Lyons & Bussman, LLP.

Philip Schradle, Assistant Attorney General, waived appearance for respondent Department of Consumer and Business Services.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

In this workers' compensation case, the issue is whether the Department of Consumer and Business Services (the department) erred in concluding that claimant may seek psychiatric treatment only from a physician within a managed care organization (MCO). We affirm.

Claimant suffered a compensable injury to her right ankle in 1985. In 1988, Dr. Weinstein began treating her for a related psychiatric condition. Several years later, she was awarded unscheduled permanent partial disability for minimal psychoneurosis. She became medically stationary in 1994, and, the following year, she was awarded permanent total disability as of the medically stationary date.

In 1997, employer notified claimant of her enrollment in Providence Vantage, MCO. Employer also advised claimant that she must select a new attending physician who is a member of the MCO panel. Claimant requested that Weinstein be permitted to continue treating her, because he had concluded that changing to another psychiatrist was risky in light of her unsteady mental health. The MCO denied the request to continue treatment with Weinstein. It stated that whether a change in medical provider would be detrimental was irrelevant under the applicable statutes, because she had been declared medically stationary.

Claimant requested review of the MCO decision by the Medical Review Unit (MRU). The MRU denied claimant's request for review, because she had become medically stationary. The department affirmed. On review, claimant contends that the department's application of the "literal" language of the statute leads to an absurd result not likely intended by the legislature. Citing *Johnson v. Star Machinery Co.*, 270 Or 694, 530 P2d 53 (1974), claimant argues that we have the authority to depart from the language of the statute if that is the only way to avoid an absurd or unreasonable result.

■ ORS 656.245(2)(a) provides that the worker generally may choose his or her attending physician and provides a procedure for subsequently changing the attending physician a limited number of times. ORS 656.245(4) then provides:

"Notwithstanding subsection (2)(a) of this section, when a self-insured employer or the insurer of an employer contracts with a managed care organization certified pursuant to ORS 656.260 for medical services required by this chapter to be provided to injured workers:

"(a) Those workers who are subject to the contract shall receive medical services in the manner prescribed in the contract. * * * If the managed care organization determines that the change in provider would be medically detrimental to the worker, the worker shall not become subject to the contract until the worker is found to be medically stationary, the worker changes physicians or the managed care organization determines that the change in provider is no longer medically detrimental, whichever event first occurs. * * *"

The language of the statute is unambiguous. It states that, if the MCO determines that a change in provider would be detrimental to the worker, then the worker is exempt from the MCO contract until (1) the worker becomes medically stationary, (2) the worker changes physicians, or (3) a change in provider no longer is detrimental, "whichever event first occurs." Thus, if a claimant becomes medically stationary, he or she becomes subject to the MCO contract, regardless of whether doing so would be medically detrimental. That is precisely what happened in this case.

Claimant does not contest that. Nor does she suggest that the statute is in any way ambiguous. She simply argues that, under the absurd results rule of *Johnson*, we need not apply the statute as it is written.

In *Johnson*, the Supreme Court did hold:

"When, however, a literal application of the language produces an absurd or unreasonable result, it is the duty of the court to construe the act, if possible, so that it is a reasonable and workable law and not inconsistent with the general policy of the legislature."

270 Or at 705 (emphasis omitted) (quoting *Fox v. Galloway*, 174 Or 339, 346-47, 148 P2d 922 (1944)). In *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996), however, the court explained that it is inappropriate to apply the rule

unless, after an examination of the text, context and legislative history of a statute, the language remains susceptible to more than one reasonable construction:

> "That maxim is best suited for helping the court to determine which of two or more plausible meanings the legislature intended. In such a case, the court will refuse to adopt the meaning that would lead to an absurd result that is inconsistent with the apparent policy of the legislation as a whole. When the legislative intent is clear from an inquiry into text and context, or from resort to legislative history, however, it would be inappropriate to apply the absurd-result maxim. If we were to do so, we would be rewriting a clear statute based solely on our conjecture that the legislature could not have intended a particular result."

*See also Young v. State of Oregon*, 161 Or App 32, 38, 983 P2d 1044 (1999) (absurd results rule limited to cases in which statute remains ambiguous after examination of text, context, and legislative history).

In this case, there is only one plausible construction of the statutory language. Even assuming that such a construction leads to an absurd result, *Johnson* does not apply.

Affirmed.