Argued and submitted December 23, 1998, affirmed July 14, 1999

# SAFECO INSURANCE COMPANY
# OF ILLINOIS,
a foreign corporation,
*Respondent,*

*v.*

## Jeanette LASKEY,
*Appellant.*

## (16-97-09054; CA A101540)

985 P2d 878

Joel S. DeVore argued the cause for appellant. With him on the briefs were Luvaas, Cobb, Richards & Fraser, P.C., and Robert A. Miller.

Brian R. Talcott argued the cause for respondent. With him on the brief were Thomas H. Tongue and Dunn, Carney, Allen, Higgins & Tongue.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

## HASELTON, J.

Defendant, Laskey (insured), appeals from the trial court's judgment in favor of her insurer, Safeco of Illinois (Safeco), on cross-motions for summary judgment, declaring that insured was not entitled to recover underinsured motorist (UIM) benefits from Safeco for damages sustained in an auto accident, and dismissing her counterclaims. The trial court concluded that insured was precluded from litigating liability for the underlying accident because she had previously (and unsuccessfully) litigated that issue in a third-party action. We conclude that the trial court correctly applied issue preclusion and, particularly, correctly construed ORS 742.504(1)(b). Accordingly, we affirm.

On appeal, the material facts are undisputed: On March 19, 1995, insured and her two sons were injured in an auto collision with a third party, Grange. Insured had a Safeco auto policy that included $10,000 in personal injury protection (PIP) coverage and $60,000 in UIM/UM coverage. Grange was insured under a policy with State Farm Insurance, with liability limits of $50,000.

On April 17, 1996, insured filed a negligence action against Grange, seeking $24,000 in economic damages and $100,000 in noneconomic damages. Grange answered, alleging that the accident was the result of insured's negligence. Ultimately, in December 1996, a jury determined that Grange was 39 percent at fault and insured was 61 percent at fault, and the court entered judgment for Grange.

In January 1997, insured made a claim for UIM benefits under her Safeco policy. Insured asserted that the judgment against her in the action with Grange was not binding with respect to her claim for UIM benefits from Safeco and, therefore, she was entitled to relitigate the issue of liability and damages to determine her entitlement to UIM benefits. Safeco denied that claim and, on September 30, 1997, filed this action against insured, seeking a declaration that its denial was proper and that it had no duty to arbitrate. Safeco contended, *inter alia,* that its denial of UIM benefits was proper because insured was barred by issue preclusion from relitigating the "issue of whether [she was] legally entitled to

4

recover [damages] from Grange, the alleged underinsured motor[ist, because the issue] already [had] been litigated to a final judgment."[1]

Insured answered, asserting, in part, that under ORS 742.504(1)(b), she was not barred from relitigating the issue of liability in her claim for UIM coverage with Safeco—that is, that the statute effectively precluded the insurer's invocation of issue preclusion. Insured further contended that, in all events, application of issue preclusion would be inequitable. By way of counterclaim, insured sought enforcement of the insurance contract, asserting an entitlement to UIM benefits and attorney fees and costs, ORS 742.061.

The parties cross-moved for summary judgment. The trial court granted Safeco's motion and dismissed insured's counterclaims, concluding that insured had "already been adjudged to be more than fifty percent at fault for her injuries and [was] therefore precluded from recovering [UIM] benefits." Judgment was entered, and this appeal followed.

On appeal, the first, and ultimately dispositive, question, see n 1, is whether issue preclusion, based on the apportionment of fault in the *Grange* litigation, bars insured's entitlement to UIM benefits. Insured raises, principally, three alternative arguments in support of her position that issue preclusion does not apply: (1) ORS 742.504(1)(b) bars Safeco's invocation of issue preclusion; (2) application of issue preclusion is inequitable under the circumstances presented here; and (3) the insurance policy barred resort to issue preclusion.

---

[1] Safeco raised two other grounds for the denial of UIM coverage. First, UIM coverage was unavailable because the policy required a reduction in UIM coverage for all sums paid or payable as PIP coverage and bodily injury liability coverage, which, after reduction for the limits of liability under Grange's State Farm policy ($50,000) and Safeco's PIP payment ($10,000), reduced available UIM coverage to zero. Second, insured, by litigating the action against Grange, which resulted in a judgment adverse to her, eliminated Safeco's "potential right of subrogation to its prejudice." The trial court never reached the merits of those propositions because the first ground discussed above was dispositive.

On appeal, Safeco again raises, and insured resists, those contentions as alternative bases for affirmance. However, we, like the trial court, determine that the first, issue preclusion, ground is decisive. Accordingly, we do not address those alternative contentions.

■        We begin with insured's statutory arguments. ORS 742.504 provides, in part:

> "Every policy required to provide the coverage specified in ORS 742.502 [underinsured coverage] shall provide uninsured motorist coverage which in each instance is no less favorable in any respect to the insured or the beneficiary than if the following provisions were set forth in the policy. However, nothing contained in this section shall require the insurer to reproduce in such policy the particular language of any of the following provisions:

> "* * * * *

> "(1)(b) *No judgment against any person or organization alleged to be legally responsible for bodily injury,* except for proceedings instituted against the insurer as provided in this policy, *shall be conclusive, as between the insured and the insurer, on the issues of liability* of such person or organization or of the amount of damages to which the insured is legally entitled." (Emphasis added.)

The statutory issue thus reduces to whether the judgment in Grange's favor, and against insured, in the third-party litigation was a "judgment *against any person or organization* alleged to be legally responsible for bodily injury." If the *Grange* judgment was such a judgment, then under ORS 742.504(1)(b), it would not be accorded preclusive effect in the present coverage dispute—and, particularly, Safeco could not offensively invoke the jury's determination that insured was primarily responsible for the accident. In resolving that question, a question of statutory construction, we adhere to the methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

Insured makes two related, but alternative, statutory arguments. First, she asserts that, because Grange alleged an affirmative defense of comparative fault, she (insured) was a "person alleged to be legally responsible for bodily injury" and, because Grange prevailed on that defense, the judgment in the *Grange* litigation was "against" her. Second, insured argues that, even if she cannot be deemed a "person alleged to be legally responsible for bodily injury" for purposes of ORS 742.504(1)(b), the statutory term "against" should be construed as meaning "involving"—and thus,

because Grange was, doubtless, a "person alleged to be legally responsible" in the third-party action and because the judgment in that case obviously "involved" Grange, the *Grange* judgment was subject to the anti-issue preclusion directive of ORS 742.504(1)(b).

■   Insured's first argument is initially plausible—even persuasive—when the text of ORS 742.504(1)(b) is viewed in abstract isolation: By virtue of Grange's comparative fault defense, insured would *seem* to have been "a person * * * alleged to be legally responsible for bodily injury." However, the first level of the *PGE* analysis requires that the text be examined in context, *PGE*, 317 Or at 610, and resort to context defeats insured's construction. In context, it is apparent that the legislature intended ORS 742.504(1)(b) to apply only to judgments against an alleged third-party tortfeasor, or another individual or entity responsible for the tortfeasor's conduct, and that the legislature did not contemplate limiting issue preclusion where the insured is principally at fault. In particular, two other provisions of ORS 742.504 include similar language "against any person or organization" who is "legally responsible" or "legally liable"—and the operation of those provisions confirms that that text cannot encompass an insured. *PGE*, 317 Or at 611 (context includes other provisions of the same and related statutes).

Those provisions of ORS 742.504 that include language that is substantially similar to the critical language in ORS 742.504(1)(b), include subsections (4)(a) and (6):

> "(4)(a)   [UM] coverage does not apply to bodily injury of an insured with respect to which such insured or the legal representative of the insured shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against *any person or organization who may be legally liable* therefor.
>
> "* * * * *
>
> "(6)   If, before the insurer makes payment of loss hereunder, the insured * * * shall institute any legal action for bodily injury *against any person or organization legally responsible* for the use of a vehicle involved in the accident,

a copy of the summons and complaint * * * shall be forwarded immediately to the insurer * * *." (Emphasis added.)

As used in those two subsections, the emphasized language does not, and cannot, encompass insureds. Subsection (4)(a) addresses the insured's prosecution of third-party actions and, thus, the reference to "any person or organization who may be legally liable" necessarily refers to such third-party tortfeasors (*e.g.*, Grange). Obviously, an insured cannot institute an action against himself or herself; consequently "any person or organization who may be legally liable" cannot include an insured. The same is true of subsection (6), which again refers to third-party actions and which, again, cannot reasonably be construed in such a way as to characterize an insured as a "person or organization legally responsible."

■      The legislature's "use of the same term throughout a statute indicates that the term has the same meaning throughout the statute." *PGE*, 317 Or at 611.[2] Consequently, insured was not a "person or organization alleged to be legally responsible for bodily injury" within the meaning of ORS 742.504(1)(b).

Insured relies on *Mazorol v. Coats*, 102 Or App 8, 12, 793 P2d 326 (1990), *rev'd on other grounds* 316 Or 367, 852 P2d 178 (1993), to support her contrary construction of ORS 742.504(1)(b). That reliance is unavailing. In *Mazorol*, the insured arbitrated with his insurer his claim for UM coverage, was awarded $9,902, and then brought a third-party action against the defendant tortfeasor. Among the issues presented was whether the award in the UM arbitration precluded the plaintiff from relitigating the amount of his damages. We held, based principally on equitable principles, that issue preclusion did not apply. *Id.* at 12. We further observed:

---

[2] We note, moreover, that the legislature repeatedly used the term "insured" throughout the statute and could easily have included that term in ORS 742.504(1)(b) but did not do so. *See, e.g., Carrigan v. State Farm Mut. Auto. Ins. Co.*, 326 Or 97, 103, 949 P2d 705 (1997) ("If the legislature desires to restrict [or expand] the scope of coverage that the statute contemplates, it does not lack the linguistic tools necessary to achieve that outcome.").

> *"If an insured sues an uninsured tortfeasor before proceeding against his own insurer, that determination has no preclusive effect on the determination between the insured and the insured's carrier.* ORS 742.504(1)(b). If, however, the insured first proceeds against his own insurer, the insurer is entitled to any recovery that the insured may make from the tortfeasor 'but only to the extent' of the insurer's payment. ORS 742.504(11)(b), (c), (e); *see also* ORS 742.504(11)(a). Those statutes indicate that the legislature contemplated that collateral estoppel would not bar a separate determination of damages and that an insured might recover more from the tortfeasor than he was able to obtain from the insurer." *Mazorol*, 102 Or App at 12 (emphasis added).

Insured here invokes the first, emphasized sentence as support for her proposed construction of ORS 742.504(1)(b). However, as insured candidly acknowledges, that observation was *dictum* — and, even that *dictum* was volunteered in the obverse context, *i.e.*, whether the UM arbitration award had preclusive effect in the third-party litigation, not whether the judgment in the third-party litigation precluded recovery on the UM policy. In all events, in *Mazorol* we did not purport to address the issue presented here, *viz.*, the effect of a comparative fault determination in third-party litigation on entitlement to UIM benefits. *Mazorol* is, thus, materially distinguishable and not controlling.

Insured's alternative statutory argument is that, even if the operative phrase in ORS 742.504(1)(b) refers solely to third-party tortfeasors and does not encompass insureds, the word "against," as used in the statute, means "involving." Thus, insured reasons, although Grange prevailed in the prior litigation, because the *Grange* judgment "involved" a "person * * * alleged to be legally responsible for bodily injury" (Grange), that judgment could not be accorded preclusive effect in the coverage dispute. Insured asserts that such a construction is compelled because:

> "To suggest that subsection (1)(b) operates to suspend issue preclusion only when the tort judgment is 'against' the other driver is to construe the statute solely for the benefit of insurers and to the detriment of insureds. Although the court may not rewrite a statute, it may presume the legislature did not intend harsh results that literal application

of statutory terms might seem to require. * * * The court may refuse a literal application of language when to do so would produce an absurd or unreasonable result."

Any other result, insured contends, would render the statute a variation of an old joke: "Heads, we flip again. Tails, you lose"—with only the insurer laughing at the punch line.

Insured's argument fails on several levels. First, in the most fundamental and literal sense, as a matter of common usage or understanding, a "judgment against" a party imposes liability on that party. Although, in the abstract, insured's proposed construction comports with a secondary meaning of "against," "with respect to, relating to"[3]—in context, the only plausible meaning is "in opposition or hostility to." *Webster's Third New Int'l Dictionary*, 39 (unabridged ed 1993). That is, a judgment cannot be "against" the prevailing party.

In addition, contrary to insured's invitation, we cannot subvert the plain meaning of the statute to avoid a supposed "absurd result." *See State v. Vasquez-Rubio,* 323 Or 275, 283, 917 P2d 494 (1996); *Young v. State of Oregon,* 161 Or App 32, 38, 983 P2d 1044 (1999). In all events, literal application of the statute is not "absurd." As Safeco observes:

> "[I]t is far from clear that the effect of ORS 742.504(1)(b), when applied only to judgments against an alleged tortfeasor, is to only benefit the insurer. An insured could prevail on liability against a tortfeasor, but receive a low damage award. Under those circumstances, the insured could relitigate the issue of damages with the insurer and perhaps improve upon the jury's award. That the insured could benefit from relitigation of the issue of damages is well illustrated by a case that defendant cites in her opening brief.

> "* * * * *

> "Moreover, an insured could prevail on liability against a tortfeasor, but with a high percentage of comparative fault. That insured could relitigate liability with the insurer and perhaps receive a more favorable comparative fault determination."

---

[3] *See Webster's Third New Int'l Dictionary,* 39 (unabridged ed 1993).

Moreover, the statute eliminates any incentive for collusive third-party litigation. But for the statute, and its anti-preclusive effect, insureds could bind their insurers by obtaining substantial unopposed or stipulated judgments against uninsured (and judgment-proof) third-party tortfeasors. Conversely, those anti-"sandbagging" concerns obviously are not implicated where, as here, the insured does not prevail in the third-party litigation.

We thus conclude that the *Grange* judgment was not a judgment subject to ORS 742.504(1)(b). Consequently, that statute did not bar Safeco's invocation of issue preclusion.

■■    Insured next contends that, regardless of the application of ORS 742.504(1)(b), Safeco failed to establish the requisites of issue preclusion. We disagree. Under Oregon law, issue preclusion is available if five requirements are met:

"1.    The issue in the two proceedings is identical.

"2.    The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3.    The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4.    The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5.    The prior proceeding was the type of proceeding to which this court will give preclusive effect." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (footnote and citations omitted).

Here, insured does not contend that any of those specific elements was not satisfied. Rather, harkening to an earlier line of Oregon cases, insured asserts that issue preclusion rests, ultimately, on considerations of fairness.[4] In particular, insured asserts that application of issue preclusion would

---

[4] *See e.g., State Farm v. Century Home*, 275 Or 97, 110, 550 P2d 1185 (1976) ("The court must also consider the fairness under all the circumstances of precluding a party."); *Mazorol*, 102 Or App at 12 (application of issue preclusion is to be "fair under all the circumstances"). *See also Restatement (Second) of Judgments* § 28, comment *c* at 278 (1982) ("Refusal of preclusion is ordinarily justified if the effect of applying preclusion is to give one person a favored position in the administration of a law.").

allow an insurer to benefit from an unfavorable determination of liability against an insured in a proceeding against an alleged tortfeasor, while, on the other hand, under ORS 742.504(1)(b), precluding an insured from benefitting from a favorable determination of liability. In that sense, insured's argument rehashes her "Heads, I win. Tails, we flip again" complaint.

That argument fails for two complementary reasons. First, even assuming insured's premise of a general "equitable" overlay to issue preclusion,[5] it is not innately inequitable to enforce issue preclusion against an insured who has had a full opportunity, and every incentive, to prove liability in third-party litigation, but has failed to do so. Second, as noted, given the potential for collusive third-party litigation, there is nothing inequitable about declining to bind the insurer to the results of third-party litigation.[6]

■      Finally, insured asserts that the policy language precludes Safeco's use of issue preclusion to bar arbitration of the UIM claim.[7] Safeco responds that insured's present argument was not raised and preserved in the trial court. In particular, Safeco points out that, in opposing summary judgment on the basis of issue preclusion, insured made only the

---

[5] In *State Farm,* the court identified several situations in which application of issue preclusion would not comport with notions of fundamental fairness, including: (1) where it appears that a verdict was the result of jury compromise; (2) where the prior judgment was "manifestly erroneous"; (3) where newly discovered evidence exists that could significantly affect the outcome of a matter; and (4) where there are inconsistent outstanding determinations on the matter sought to be precluded. 275 Or at 108-09. None of those concerns is presented here.

[6] Indeed, the balancing of those interests is reflected in ORS 742.504(1)(b). If the legislature had wanted to completely eliminate issue preclusion based on the results of third-party litigation, then it could easily have done so. But it did not. *See Drews v. EBI Companies,* 310 Or 134, 141, 795 P2d 531 (1990) (it is within the legislature's power to enact statutes which limit or eliminate issue preclusion).

[7] The pertinent policy language states:

"[Safeco] will pay damages which an insured is legally entitled to recover from the owner or operator of an * * * underinsured motor vehicle because of bodily injury [to the insured and caused by an accident].

"* * * Determination as to whether the insured is legally entitled to recover damages, and if so, the amount thereof, shall be made by agreement between the insured and us, or, if they fail to agree, by arbitration.

"Any judgment for damages arising out of a suit brought without our written consent is not binding on us."

statutory and "fairness" arguments addressed above and never relied on the policy language it now invokes.

We agree with Safeco. Although the applicability of issue preclusion was the central issue before the trial court, insured never asserted that the policy barred issue preclusion. The contention insured now makes based on the contract, rather than the statute or equitable concerns, is dramatically different from those presented to the trial court, implicating a qualitatively different analysis. *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988), is not so elastic. *See, e.g., Federated Service Ins. Co. v. Granados*, 133 Or App 5, 11, 889 P2d 1312, *rev den* 321 Or 512 (1995) (refusing to consider, as unpreserved, argument based on policy language).

Affirmed.