Argued and submitted February 9, affirmed December 29, 1999

In the Matter of the Compensation of
Daniel I. VanWechel, Claimant.

FLEETWOOD HOMES OF OREGON,
*Petitioner,*

*v.*

Daniel I. VANWECHEL,
*Respondent.*

(WCB 97-06406; CA A102189)

993 P2d 171

Richard D. Barber, Jr. argued the cause for petitioner. With him on the brief was Sheridan and Bronstein.

R. Adian Martin argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Employer seeks review of a Workers' Compensation Board order requiring a claim to be reopened following acceptance of additional medical conditions. ORS 656.262(7)(c). We review the order for errors of law, ORS 183.482(8), and affirm.

The relevant facts are undisputed. In January 1993, claimant injured his right knee while working for employer. In early March, claimant underwent knee surgery which revealed no meniscus tear as had been diagnosed but, instead, revealed injuries to the anterior cruciate ligament (ACL) and medial femoral condyle, which were repaired. After the surgery was performed, employer accepted a "right knee meniscus tear" claim. The claim was closed in February 1994 by a determination order with an award of partial permanent disability (PPD) for a right knee meniscus tear. An order on reconsideration affirmed the determination order.

After claim closure, claimant requested that employer accept additional conditions. Employer amended its claim acceptance to include two new conditions—the right knee ACL tear and fragmentation of the medial femoral condyle. Claimant then requested a hearing alleging a *de facto* denial of the ACL and medial femoral condyle conditions. An administrative law judge (ALJ) awarded claimant attorney fees for getting the new conditions accepted.

Next, claimant wrote to Department of Consumer and Business Services (DCBS) requesting that the claim be reopened for processing. DCBS denied the request, stating that the new conditions had been addressed at the time of closure. Claimant then requested a hearing for failure to process the newly accepted conditions. An ALJ held that employer did not have a duty to process the new conditions. The Board reversed, concluding that the new conditions must be "processed" but that reopening the claim might or might not be necessary. Employer then informed claimant that it was processing the new conditions, but that the processing did not require reopening the claim. Again, claimant requested a hearing.

Between the issuance of the Board's order to process the new conditions and employer's subsequent letter to claimant confirming processing but declining to reopen the claim, the legislature amended ORS 656.262(7) to include paragraph (c). ORS 656.262(7)(c) provides, in part:

"When an insurer or self-insured employer determines that the claim qualifies for claim closure, the insurer or self-insured employer shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable. * * * If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition."

This amendment applies retroactively to include "all claims or causes of action existing or arising on or after the effective date of this Act, regardless of the date of injury or the date a claim is presented * * *." Or Laws 1997, ch 605, § 2. The effective date of the act was the date of its passage—July 25, 1997. *Id.* at § 4.

In December 1997, an ALJ concluded that employer was required to reopen the claim to process the post-closure accepted conditions because ORS 656.262(7)(c) requires claim reopening without regard to prior rating or impairment. The Board affirmed the ALJ, finding no ambiguity in the text of ORS 656.262(7)(c) when applied to the facts of this case. Using a plain language reading of the statute, the Board explained that once the statutory prerequisite of accepting a new condition after claim closure is met, an insurer or self-insured employer has an absolute duty, under ORS 656.262(7)(c), to reopen the claim for processing with respect to the new condition.

■ On appeal, employer raises two assignments of error. The first is that the Board erred when it required employer to reopen the claim to process conditions already processed. The second is that the Board erred in interpreting ORS 656.262(7)(c) when it failed to find the statute's terms to be ambiguous or that a direct reading of the statute would lead to an unreasonable or absurd result. Claimant responds that the Board correctly interpreted the unambiguous language of ORS 656.262(7)(c) to require reopening and processing of new conditions accepted after claim closure.

■■ In interpreting the statute, we apply the methodology set forth in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). The first level of analysis is to examine the text and context of the statute. *Id.* at 610. Words of common usage should be given their "plain, natural and ordinary meaning." *Id.* at 611. We are permitted neither to insert what the legislature omitted nor to omit what the legislature inserted. ORS 174.010. Only if the meaning of the statute is ambiguous from the text and context are we to look to legislative history and, if necessary, to maxims of statutory construction. *Id.* at 611-12.

The plain language of ORS 656.262(7)(c) is clear. Insurers and self-insured employers are required to state which conditions are compensable at the time a claim is closed. Here, employer described the condition accepted and rated for compensation at closure as the "right knee meniscus tear." ORS 656.262(7)(c) further states that once a claim is closed, if a new condition is accepted, then the insurer or self-insured employer must reopen the claim to process the newly accepted condition. Here, when employer accepted the ACL and medial femoral condyle conditions after claim closure, employer was required to reopen the claim and process those conditions. The text of the statute is unambiguous and employer concedes as much.

The context of a statute includes other provisions of the same statute and other related statutes. *Id.* at 611. The other provisions of ORS 656.262 address processing of claims, payment of compensation by employers, reporting, acceptance and denial of claims, penalties for unreasonable payment delays, and worker-attorney cooperation in claim investigations. Nothing in those provisions creates ambiguity in the language of paragraph (7)(c). Likewise, nothing in the related statutes leads to a conclusion that the words contained in ORS 656.262(7)(c) are susceptible to more than one reasonable construction. *Koitzsch v. Liberty Northwest Ins. Corp.*, 125 Or App 666, 669, 866 P2d 514 (1994). Because the meaning of ORS 656.262(7)(c) is unambiguous after an examination of the text and context of the statute, our statutory analysis ends here. *See Northwest Reforestation Contractors v. Summit Forests, Inc.*, 143 Or App 138, 144, 922 P2d 1240 (1996).

Employer posits, as "context," two hypothetical situations that employer claims, produce impossible, unreasonable, and absurd results warranting an investigation into the legislative history of ORS 656.262(7)(c). We disagree. Employer's hypotheticals do not constitute context. Instead, they raise the issue of the appropriate application of the absurd results principle within the statutory analysis framework of *PGE*.

■■ We recently examined the role of the absurd results principle in statutory construction in *Young v. State of Oregon*, 161 Or App 32, 37-40, 983 P2d 1044, *rev den* 329 Or 447 (1999). *Young* concluded that we do not apply the absurd results principle to determine legislative intent when there is no ambiguity in the text and context of the statute. *Id.* at 39-40. The absurd results principle is applicable only at the third level of the *PGE* analysis—as a general maxim of statutory construction—when the language of a statute remains ambiguous after an examination of its text, context, and legislative history. *Jahnke v. US West Communications*, 161 Or App 44, 47-48, 983 P2d 1053 (1999). Where the legislature's intent is known before reaching the third level of the *PGE* analysis, it is inappropriate to apply the absurd results principle. *State v. Vasquez-Rubio*, 323 Or 275, 283, 917 P2d 494 (1996). Quite simply, we cannot subvert the plain meaning of a statute to avoid a supposedly absurd result. *Safeco Ins. Co. v. Laskey*, 162 Or App 1, 9, 985 P2d 878 (1999). Even if the conflicts that employer hypothesizes actually arise, *PGE* recognizes that the legislature's power "includes the authority to write a seemingly absurd law, so long as the intent to do that is stated clearly." *Young*, 161 Or App at 38. For these reasons we do not consider employer's absurd results arguments.

Because the text and context of ORS 656.262(7)(c) are unambiguous, we conclude that the Board correctly interpreted that statute to require employer to reopen the claim for processing the newly accepted conditions.

Affirmed.